GAGE *v.* BOARD OF CONTROL OF PONTIAC STATE HOSPITAL.

1. Master and Servant—Workmen's Compensation Act—Notice —Medical and Hospital Expenses—Liability.

Under section 3, part 2, of the workmen's compensation act (2 Comp. Laws 1915, § 5434), where an injured employee was taken by his family physician to a hospital and operated upon, his case requiring immediate action, and the next day notice was given to the employer and aid requested, but no response was made thereto, the latter is liable for plaintiff's reasonable medical and hospital expenses during the remainder of the three weeks after the injury.[1]

2. Same—Statute—Construction—Exception.

While a logical construction of said statute requires notice and opportunity to the employer to select the physician and furnish the needed service during the prescribed three weeks before the injured employee can secure the same at the employer's expense, yet it is not an unreasonable or strained construction, in view of its purpose, to recognize as inferable exceptions in extraordinary cases where the surrounding circumstances and critical condition of the injured employee present emergencies or exigencies

[1] On the question of allowance for medical and hospital services to injured employee under the Workmen's Compensation Act, see note in L. R. A. 1917D, 178.

demanding prompt action which reasonably warrant him in securing the needed service at the employer's expense without first giving notice and opportunity to furnish or offer the same.

3. SAME—AWARD—NOTICE.

Evidence that the employee was injured in the morning, but did not at first realize the nature of his injury, that the same day his wife called the family physician, who pronounced the case strangulated hernia, and advised an immediate operation, which was performed that evening, the physician stating that the following day would be too late, *held*, to support the conclusion of the industrial accident board that the employer was liable for the expenses of said operation, although no notice or opportunity to furnish the same had been given.

Certiorari to Industrial Accident Board. Submitted April 9, 1919. (Docket No. 17.) Decided May 29, 1919.

Clinton C. Gage presented his claim for compensation against the board of control of the Pontiac State Hospital for medical, surgical and hospital expenses incurred as a result of an accidental injury in defendant's employ. From an order awarding compensation, defendant brings certiorari. Affirmed.

*Alex. J. Groesbeck*, Attorney General, and *Clare Retan*, Assistant Attorney General, for appellant.

*A. Floyd Blakeslee*, for appellee.

STEERE, J. In this case defendant questions the validity of an award of $189 made against it by the State industrial accident board in favor of plaintiff, for medical, surgical and hospital expenses incurred by him as the result of an accidental injury which he sustained on September 15, 1917, while in defendant's employ. The necessity for such services and the reasonableness of the charges made therefor are apparently not questioned, but it is contended that defend-

ant was entitled under the employers' liability law to notice of plaintiff's injury and need of medical attendance by reason of it, and a reasonable opportunity to itself furnish all needed medical, surgical and hospital service, before plaintiff could legally secure the same of others at defendant's expense. This contention is based on the provisions of section 3, part 2, of the workmen's compensation act (2 Comp. Laws 1915, § 5434), which is as follows:

"During the first three weeks after the injury the employer shall furnish or cause to be furnished reasonable medical and hospital services and medicines when they are needed."

Plaintiff's injury was a hernia. The facts are practically undisputed and the case has been adjusted in all other respects by appropriate proceedings before the industrial accident board based on an agreement in regard to compensation, approved by the board. The issue raised is pointedly presented and concisely argued by counsel on both sides, and by them narrowed to the question of whether, under the claimed exigencies shown here, the injured party may, pending reasonable notice to the employer of the necessity for medical and surgical attention and until the latter after reasonable notice furnishes the same, secure such attention at the expense of the employer. Counsel for plaintiff frankly concedes it inferable from the duty imposed by the statute that in the majority of cases and as a general rule the employer should be entitled to furnish, or dictate where an injured employee shall obtain, the necessary medical, surgical and hospital attendance, and broadly admits such general rule proper for the protection of both parties, "in order to prevent an unscrupulous physician from exploiting the injury to his own benefit and to prevent, perhaps, a possibility of malingering on the part of the injured employee." But no such evil elements

are claimed or suggested as present in this case, and it is urged for plaintiff to be also fairly inferable from the act as a whole and the particular subject to which the section applies that the injured party may secure such services at the expense of the employer in exceptional cases involving manifestations of emergency and demanding prompt attention, as in the instant case, and whether such excepting conditions existed is a question of fact for the accident board to determine.

Plaintiff's home was on Johnson avenue in the city of Pontiac. He was when injured and had been for many years employed by defendant at the Pontiac State Hospital for the Insane, in its building department. On the day of his injury he was working in a tunnel where it was somewhat dark and in attempting to lift or carry out some material experienced an injury the nature of which he did not then apparently understand, or localize, but which caused him to suspend work, telling his "boss," who was the superintendent, that he was sick and had to go home, which he did, arriving there between 9 and 10 o'clock, as his wife testified, not yet knowing what ailed him. Shortly before noon he discovered that he was suffering from a hernia. During the day he experienced increasing pain and grew weaker. His wife summoned their family physician, Dr. Fox, who called shortly after supper and found plaintiff suffering with a strangulated femoral hernia which, in the doctor's opinion, demanded prompt surgical action, and he at once called in for consultation a surgeon in whom he had confidence named Dr. Howlett, and an immediate operation was deemed by them necessary to save the patient's life. He was thereupon taken in an ambulance to the Pontiac city hospital, before dark that evening, and operated upon almost immediately, remaining in the hospital 19 days. He made a good recovery and at the time of hearing before the board

had returned to his work in defendant's employ. The bill in question is for surgical and medical attendance, ambulance, and hospital expenses, the largest item being $100 for the operation, furnished within three weeks after the injury. Of the necessity for prompt action after the physicians had determined Gage's condition Dr. Fox testified in part as follows:

"*Q.* Was there any particular urgency there?

"*A.* Very much so, yes.

"*Q.* What was the hurry?

"*A.* What we call strangulated hernia. It is where the bowel goes down and becomes strangulated. It is strangulated there and the bands go round to the outer part and the circulation is shut off. It is sometimes only a few hours before gangrene will set in in the bowels, which means almost certain death.

"*Q.* For that reason you considered that an immediate operation was necessary?

"*A.* Yes, sir.

"*Q.* In your opinion a delay would have been fatal?

"*A.* Yes, sir,  In the morning this man would have been beyond help."

The Pontiac State Hospital is one of the State asylums for the insane, formerly designated as the "Eastern Michigan Asylum" (1 Comp. Laws 1915, § 1311), but given its present name in 1911 without change of character or functions by an act devoted to "Changing the names of the Michigan Asylums for the Insane" (1 Comp. Laws 1915, § 1365). These institutions have, under the statute providing for them, a medical superintendent with adequate medical and surgical staff for the purposes of the institution, which is the care and treatment of insane inmates committed to them by the probate courts and designated in the act as "patients." Dr. Christian was then medical superintendent of the institution. Mr. Halsey, its steward, testified it was customary to furnish medical attendance and hospital service to its employees in need of the same; that they did surgical work there

but had a surgeon, Dr. Mack, in Detroit whom they called in to do "the surgical work—the complicated work."

Defendant contends that reasonable notice and opportunity were not given it of plaintiff's injury and needs, and as the statute makes it mandatory for the employer to furnish the same, plaintiff was not authorized to secure such service at its expense. The only notice plaintiff gave in relation to the matter was when he quit work in the middle of the forenoon, telling his boss, the superintendent, that he was sick and had to go home. This, while not definite notice of an accidental injury, was at least notice of a sudden physical affliction which rendered him incapable of continuing at work. Plaintiff, who testified he never was advised and did not then know he could receive medical attention at the hospital, states that his condition was such that "everything was hurly-burly" with him anyway and his "mind was occupied in other ways"; that he never notified them himself and did not know who did. His wife, who first cared for him after he reached home, testified that she tried to get their family physician some time before she succeeded; that after he came and she learned of the seriousness of her husband's condition she "took on and cried" for he had to be taken to the hospital immediately; but that she notified defendant the next morning, which she says was "the first chance I had," that she promptly went up there the next morning and tried to see Dr. Christian to notify him, but he was not in and she told his assistant, Dr. Butler, about it,—of the operation and that her husband was in the city hospital—and asked if they could do anything for him, saying "he was entitled to have something done by them for him if they did anything for any of their employees," to which Dr. Butler replied he would report the matter to Dr. Christian as soon as he re-

turned, and when she asked if it was necessary for her to do so he replied it was not.

It appears undisputed that within 24 hours after the accident defendant was fully notified of it, and told where plaintiff then was by his wife, who requested aid in his behalf. Defendant then had notice with a request for proper attention, certainly giving opportunity to offer, and so far as shown to furnish from that time on all needed medical and hospital services during the remaining 20 days of the prescribed three weeks. It is not shown or claimed that defendant at any time furnished or offered to furnish plaintiff any free medical or hospital services or medicines for his accidental injury while in its employ. After such notice, request and reasonable opportunity to furnish or offer the required treatment and failure to act, defendant was clearly liable for plaintiff's reasonable expenses in securing the same during the remainder of the three weeks after the injury.

The more serious question is that of the expenses incurred in the claimed emergency prior to notice. Of this contention the board found and held as follows:

"It would seem that ordinarily the employer should be notified of an accident and given an opportunity to provide medical and surgical treatment to an injured workman. However, in a case like the instant one where the employee is in such a serious condition as to require an immediate operation and where his life would be endangered by any delay, the board believes that he should have the right to secure the necessary attention as soon as possible and that the employer should bear the expense of the same. * * * Respondent failed and neglected to offer any medical services even after receiving notice of the injury. The board believes that because of applicant's serious condition, the undisputed testimony of his physician being that an immediate operation was imperative in order to save his life, the case was brought within the emer-

gency class, and respondent should pay the expenses incurred by the applicant for medical and hospital services during the first three weeks after his injury as provided by law."

In 1 Honnold on Workmen's Compensation, § 193, where the admitted general rule of the employer's right to select the physician and furnish the necessary services for treatment of an injured employee is discussed, the author adds as a constructive corollary:

"But this does not militate against the employee's right to obtain medical and surgical treatment at the expense of his employer in the interim between the happening of the injury and time for notice to the employer of the employee's needs, subject to the right of the employer or insurer to change physicians at the close of the emergency treatment."

The authority to support this text is found in 1 Cal. I. A. C. Dec. pp. 385, 575. Counsel do not cite nor have we found any decisions by courts of last resort where this question has been directly involved. Counsel for defendant cite but two cases which relate to liability under a similar provision for medical services where the employee has procured the same without the employer's knowledge or consent—*Keigher* v. *General Electric Co.,* 173 App. Div. 207 (158 N. Y. Supp. 939), and *City of Milwaukee* v. *Miller,* 154 Wis. 652 (144 N. W. 188, L. R. A, 1916A, 1, Ann. Cas. 1915B, 847). While the cases deal with that subject the exact question at issue here was not involved. Counsel quote from the *Keigher Case* as follows:

"But the duty to provide certain services, which is cast by the statute upon the employer naturally implies the right of the latter to select his own agencies for the proper fulfillment of that duty, unless language is found in the statute indicating a contrary intent."

An examination of that case shows that defendant had provided for the injured employee a competent physician and surgeon, who took charge of the case and rendered professional service for a time, when the employee refused longer to accept his services and requested the employment of a certain physician of his own selection, which defendant declined to do. The physician the employee desired thereafter rendered him medical services which defendant declined to pay for. The court held that under these circumstances the general rule applied, and sustained the refusal. No question of intervening jeopardy before notice, or pressing emergency, was involved.

In *City of Milwaukee* v. *Miller, supra,* the employee, Miller, suffered an injury to his great toe and without requesting medical service or notifying the municipality of his injury employed his own physician and nurse. Eleven days after the accident amputation of the toe was deemed necessary by his physician, who then performed the operation. Ten days later, and three weeks after the accident, Miller for the first time notified the city of his injury and made claim for compensation, but even then gave no notice of his requiring medical services. Some time after receiving this notice the city tendered him the services of a competent physician which he did not accept and continued to employ his own physician until he had charged up 130 visits and the bill for medical service and nursing, which Miller claimed the city should pay, amounting to over $250. This the court declared "preposterous" in view of the nature of the accident and actual needs of the patient. No question of emergency was involved; but in discussing the facts and applying the general rule of the employer's right to notice, etc., the court to a degree recognized an inferable exception to it under possible circumstances as follows:

206—Mich.—3.

"The result is that Miller, since he failed to notify his employer of his need, never had competency to employ a physician at the expense of the city of Milwaukee, except for such reasonable length of time as necessarily intervened between his injury and reasonable opportunity after due notice for the city to exercise its privilege."

In that case the general rule, conceded here, that the law should be construed and applied so as to secure to the employer reasonable opportunity to conserve the related interests of both parties to the misfortune by supplying the medical and surgical needs of the injured is instructively discussed at length. Running through the discussion is an indicated recognition that by fair construction of the act there may be exceptional cases where it is permissible and in the interest of both parties for the injured party to promptly secure such services before notice, although "ordinarily" reasonable opportunity should be first accorded by him to the employer. It is pointed out that the reason of the provision is two-fold:

"*First.* As a rule, an employer is more competent to judge the efficiency of the doctor employed and to provide efficient medical and surgical treatment. *Second.* It is to the interest of the employer to furnish the very best medical and surgical treatment, so as to minimize the result of the injury and to secure as early a recovery as possible. The more serious the result of the injury, the more the employer must pay."

In this case there was, as the result of prompt and efficient action after plaintiff's critical condition was discovered, an early and full recovery, at small expense to defendant compared with a death loss which was threatened and would have been the result of delay until the following morning, as the undisputed medical testimony shows. It is indicated that plaintiff after his return home and his distress increased was not in a physical or mental condition to judge or act in

the matter.   His wife is not shown to have then known he had sustained an accidental injury.   She knew he was sick, and when his condition indicated the need called in their family physician who recognized the emergency.   It is undisputed that from that time immediate and proper action was successfully taken to save the patient's life by a prompt and critical major operation, which it can with some force be contended might have been delayed until too late by sending word to the hospital and waiting for them to investigate and call from Detroit Dr. Mack, who did their complicated surgery work.   Broadly considered, the statute as to medical service to be paid for by the employer involves the combined interests of both parties.   What services were actually and reasonably necessary to that end, and what is a fair compensation therefor are the vital inquiries.   Unquestionably that construction of the statute is logical and the adopted rule sound which requires notice and opportunity to the employer to select the physician and furnish the needed service during the prescribed three weeks before the injured party can secure the same at the employer's expense, but in the many complications which arise in industrial activities it is not an unreasonable or strained construction of the statute in view of its purpose to recognize as inferable exceptions in extraordinary cases where the surrounding circumstances and critical condition of the injured party present emergencies, or exigencies demanding prompt action which reasonably warrant the injured party in securing the then needed service at the employer's expense without first giving notice and opportunity to furnish or offer the same.   Such cases are, of course, distinctively exceptional and consequently rare.   Where such exception is claimed, the question of a pressing necessity demanding and excusing prompt action before reasonable time for notice

and opportunity thereafter for the employer to act becomes primarily an issue of fact. There is testimony in this case to support the conclusions of the board in that particular.

The award will, therefore, stand affirmed.

BIRD, C. J., and OSTRANDER, MOORE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred.