[File No. 6511.]

SISTERS OF MERCY OF DEVILS LAKE, a Corporation, Respondent, v. RAMSEY COUNTY, a Public Corporation,
and
CASS COUNTY, a Public Corporation, Appellant.

(279 N. W. 759.)

Opinion filed April 2, 1938. Application for modification denied June 4, 1938.

*Odin J. Strandness,* Assistant State's Attorney, for appellant.
*Sinness & Duffy,* for respondent Sisters of Mercy.
*Obert C. Teigen,* State's Attorney, for respondent Ramsey County.

BURR, J.   On July 28, 1935, one Isadore Trudeau, an indigent person, was severely injured in an automobile accident while traveling in Ramsey county.   The officials of that county took charge of him and placed him in the plaintiff hospital for treatment at the expense of Ramsey county.

After his discharge from the hospital an action was brought by other counties to determine the county of his residence, and therein it was determined the injured man, during all of the time involved, had his legal settlement for poor relief in Cass county; but in that action the question of liability of Cass county for the cost of the relief was not litigated.

Plaintiff brings this action against Ramsey county and against Cass county to recover on the theory it furnished emergency relief to a resident of Cass county.   Cass county defends on the ground that it never authorized any relief, never ratified the giving of the same, and that it has no statutory liability therefor, and Ramsey county, while admitting primary liability, insists that ultimately Cass county should pay the bill.

There is little dispute as to the facts. It is admitted that Ramsey county was legally obliged to furnish the relief; it is not claimed there was unnecessary delay in ascertaining the facts, and there is no dispute as to the value of the services rendered.

The trial court held that Ramsey county could recover from Cass county and Cass county appeals.

Under the provisions of §. 13, chapter 97, Session Laws of 1933, as amended by § 2, chapter 119, Session Laws of 1935, it was obligatory on Ramsey county to provide for Trudeau under the circumstances of this case; and when an agreement can not be effected between two or more counties as to the liability for one who has become a public charge, an action may be brought by "the county commissioners of the county in which said person is then residing . . . to determine the issue."

The sole contention of appellant is that emergency relief is the obligation of the county where the emergency occurs, whatever may be the obligation of Cass county; that Cass county is not liable for any relief not authorized by it, nor is it required by statute to reimburse Ramsey county for any relief furnished by the latter county until after Cass county authorized it, or where relief was furnished after the action was brought which determined that Cass county was the place of settlement.

In support of this contention appellant cites St. Luke's Hospital Asso. v. Grand Forks County, 8 N. D. 241, 77 N. W. 598, and Mandan Deaconess Hospital v. Sioux County, 63 N. D. 538, 248 N. W. 924, asserting that under the first case cited the county of Cass is not "liable as a debtor for aid furnished to a pauper," as it is necessary "either that there be a statute authorizing any person to give it at the expense of the county, or that it was extended pursuant to the request of some one having authority to act . . . ." for the county. Appellant asserts that this § 13 as amended makes it the duty of the county where the injured man is found to provide emergency relief and makes no provision for reimbursement for such emergency relief, and, therefore, there is no statute authorizing the relief at the expense of Cass county, but, on the contrary, requires Ramsey county to furnish it. It is admitted that none of the officials of Cass county authorized the extension of the emergency relief.

The principle contended for by the appellant, to-wit, that it "is liable for the support of the poor only to the extent it has been rendered so by statute" is supported by the second case cited. However, we are convinced that neither case is applicable to the situation here. In both cases the relief was furnished by private persons having no connection with the oversight of the poor, not obligated to furnish relief, and exercising no authority for the county. So far as the counties involved were concerned, the relief furnished was voluntary, and, therefore, the counties were not liable.

The underlying principle involved in this case deals with the state's treatment of the poor and unfortunate. There has been evolved a carefully wrought out system which places the primary responsibility for such people upon the county in which the unfortunate has his legal settlement.

The whole policy of our law has been to differentiate between the counties and to fix the liability of each county for the entire support of its own poor, no matter where the poor may be living within the state. Legal settlement is defined, the counties are made chargeable for the support of those having legal settlement therein, provision is made for return of the indigent to the proper county or agreement between various counties in this respect, and when such legal settlement is acquired the county of such legal settlement is obliged "to relieve and support the persons acquiring such residence in case they are in need of relief." Sess. Laws of 1933, chap. 97, § 4. If the legal settlement be in a certain county and the person be in need of relief, it is the duty of the county to support him no matter in what county that person may be living. He may be removed to the proper county under the provisions of § 14, chapter 97 of the Session Laws of 1933; but there is nothing to prevent the county legally bound to support him from having him returned to that county. The obligation is made full and complete. There is no distinction in these sections between the liability of the county for emergency relief and the liability of the county for general relief.

While the statute does not use the term "emergency relief" in providing for the relief of the poor, it does use the term "temporary relief," making it the duty of the overseer when he ascertains "by investigation that any poor person or family requires assistance, he shall

furnish them such temporary aid as may be necessary for immediate relief, but before final or permanent relief shall be given any case, the overseer shall consider whether the distress can be relieved by other means than by the expenditure of county funds." Sess. Laws 1933, chap. 97, § 5.

This is equivalent to "emergency relief," and when the overseers find the county of legal settlement so that the distress can be remedied by removal to the proper county, or by agreement with that county, or by court procedure, etc., there need no longer be a drain on their county's fund.

Had Ramsey county conveyed the indigent to Cass county under the provisions of § 14, as amended by chapter 119 of the Session Laws of 1935, then under the provisions of § 16 of chapter 97 of the Session Laws of 1933, Cass county would "be required to receive such person and provide care for such person in the same manner as to the persons whose legal residence are situated therein." In addition, under the provisions of § 14 of said chapter, as amended, Cass county could make a contract with Ramsey county "with regard to the abode and keep of said poor person." All through the statute there runs the theory that the county of the legal residence is obliged to support its poor in the state no matter in what part of the state the poor may be found. If the contention of appellant be correct, then, though the county in which there is legal settlement is obliged "to relieve and support the persons acquiring such residence in case they are in need of relief," yet this obligation is but partial because in case of emergency in another county there would be no obligation until it authorized it. Such appears to be the holding of the South Dakota court in Hamlin County v. Clark County, 1 S. D. 131, 45 N. W. 329, which will be referred to later.

Through all the history of poor relief by the different states, when support of the poor became a public charge, there runs the distinction between those who voluntarily furnish relief and those who are compelled by law to do so. In the case of the former no reimbursement can be had until the relief is authorized by proper authority; but in the latter instance—that is, where the law compels one other than the one chargeable with support—the law presupposes reimbursement on the theory that there is an implied contract to that effect. This is

taken for granted. In Goshen v. Stonington, 4 Conn. 209, 218, 10 Am. Dec. 121 (decided 1822) this issue is involved. The plaintiff had furnished supplies to paupers because of necessity and the court says:

"It has been objected, that an actual request for the supplies furnished the paupers, or an express promise of payment, was requisite, to fix a legal liability on the defendants.

"If the advancements made had been voluntary, the objection would be well founded, and fatal to the plaintiffs' hopes; but, they were compelled by law to make them; and in this event, the law gives a right of recovery. The plaintiffs' case may be assimilated, to the payment of money by a surety for his principal, which furnishes a sufficient cause of action, without an actual request or promise."

It is the duty of the county to take care of its poor and unfortunate, no matter in what county such poor may happen to be. Provision is made for the determination of any controversy between two or more counties as to the place of legal settlement. No matter in what county the unfortunate has his legal settlement, if it be an emergency case like the one involved here, it is the duty of the county where the unfortunate is found to render the necessary assistance.

Appellant urges that because § 13, as amended, in dealing with an action to determine place of legal settlement, provides "when an action is brought for the purposes herein provided, the county commissioners of the county in which the poor person is located shall contribute to the support of such poor person during the pendency of said action, subject to reimbursement by the county where it is finally determined such poor person has legal residence, if such action is decided favorably to the county contributing to the maintenance of such poor person" it is clear its liability does not attach until the action is commenced.

The purpose of such section is based upon a different conception. The purpose of emergency relief is based upon the instincts of humanity. Had Ramsey county bundled up this unfortunate man and carted him immediately to Cass county in a truck, there would be no question as to the liability for the subsequent relief. It is conceded the expense was necessary, and, therefore, Cass county would have incurred the same amount. Because it was impossible to do so under the circum-

stances does not relieve Cass county of its obligation to take care of its own poor. Where such an emergency arises, one can not stop to determine who must pay the bill ultimately. The relief must be furnished. While the statute says in this case that Ramsey county should take care of the temporary requirements, it does not by any express term relieve Cass county of its liability. In fact, it makes Ramsey county the agent of Cass county for the specific purpose. Clearly the dictates of humanity require that such unfortunate shall not be shunted back and forth between two counties while the action is pending, and orderly procedure requires that the matter be determined with as little delay, expense, and hardship as are possible.

Section 13 makes provision for the determination of the issue, in the meantime the unfortunate being taken care of. This does not shift the primary responsibility. This section provides that in such an action "the court shall have full power in such action to make determination fixing the rights and liability of the counties. . . ." Appellant would confine this power to the fixing of rights and liabilities after the commencement of the action; but the statute does not so limit the power. The duty of the court is to determine the county primarily liable. The controversy arises over this. The amount involved may be material, but if so is secondary, and because of this the legislature empowers the courts to determine all of the matters arising from such controversy. It is not the purpose of the statute to require or provide for divided support. Save the unfortunate and determine liability afterwards.

In the South Dakota case, Hamlin County v. Clark County, 1 S. D. 131, 45 N. W. 329, supra, the facts appear to be identical with those involved in the case at bar. The South Dakota statute required temporary relief to be furnished to one who was sick and in distress, though not an inhabitant of the county. The South Dakota statute also provided that each county should be liable for the relief of the poor and indigent lawfully settled therein. The plaintiff county, because of the emergency which arose in that county, furnished temporary relief to one entitled to relief from the defendant county and then sought reimbursement for this emergency relief from the defendant county. The court held in effect that each county was liable for the support of its own poor; but that in addition there was imposed

upon a county the legal duty of supporting in an emergency the poor of another county found within its borders; that this was an additional statutory duty imposed upon it and that, therefore, the county in which the indigent had his legal settlement was not liable for this emergency relief because there was no statute requiring reimbursement. The court also held that the relationship between these two counties had "none of the elements of a contract, express or implied, in a demand for the support or relief of the poor. The liability, if any, originates solely in the positive provisions of the statute."

With all due respect to the view of the South Dakota court on a state of facts similar to the one involved in the case at bar, this court is convinced it does not reflect our legislation nor differentiate sufficiently between voluntary, unauthorized support and support which is legally compelled.

No other case has been cited which deals directly with the point involved, but in St. Albans Hospital v. St. Albans, 107 Vt. 59, 176 A. 302, we have a case where a similar principle is applied. The Vermont statute provided: " 'If a transient person is suddenly taken sick . . . and is in need of relief . . . the person at whose house he is, . . . shall be at the expense of relieving and supporting such person, *until he represents his situation to the overseer of the poor of the town,* . . . *after which the overseer of the town* so notified shall provide for his support; and, if the overseer neglects to provide for such support, the person so supporting him may recover therefor in an action of contract, on this statute, against the town so notified.' "

In this Vermont case a transient, taken suddenly ill, was confined to the hospital. There were some questions raised as to whether a hospital was a "house" within the purview of the statute and whether it was necessary to show that the transient was "a transient pauper," but both contentions were determined adverse to the city. The court appears to place its decision upon the broad principle that the primary duty of support was upon the city; that it was the duty of the person in whose place the transient became sick to supply emergency relief at his own expense "until he represents his situation to the overseer of the poor," and thereafter it was the duty of the overseer to pay the expenses and reimburse the one furnishing the emergency relief. The Vermont court says: "When we keep in mind the obvious purpose of

the statute as hereinbefore stated and the urgency usually involved in such cases, it is easy to see that some financial sponsor for the expenses bound to accrue ought to be provided, pending the discovery of the person or municipality ultimately liable therefor. This the Legislature has done."

The Vermont statute did not in express terms require the city to pay any of the expense incurred prior to the time that the plaintiff had represented "his situation to the overseer of the poor" of that city, and it does not appear any issue arose over this. Nevertheless, the court permitted the recovery of all of the expenses incurred prior to that time, that is, the emergency relief furnished by the one who, under the statute, was duty bound to furnish the emergency relief.

The majority of the court determines that this principle is in harmony with the whole theory of our laws for the relief of the poor. Cass county was primarily liable for the support of Trudeau. No one knew this at the time the emergency arose. When a controversy arises over such matters it is the duty of the court to determine the entire controversy between the counties—viz., to which county must Trudeau look for support—and fix the respective liabilities. Here this is done in two actions, but that is not material.

The court, in interpreting the poor relief laws, is faced with the difficulty of determining just what is the public policy as established by the legislature. To ascertain this we consider the whole system of laws dealing with the subject, and while there may be good argument for a contrary view, the court is impelled to determine that the public policy of the State is as heretofore stated.

The writer is of the opinion that the rule announced in the case of Hamlin County v. Clark County, 1 S. D. 131, 45 N. W. 329, supra, is the true rule, but recognizes the court is confronted with the difficulty of determining the intent of the legislature and must decide which of the two rules is the one the legislative department had in mind in legislating.

But while the policy of our law makes one county the agent of the other to furnish emergency relief, such agency is limited entirely to relief in an "emergency." An emergency is "an unforeseen combination of circumstances which calls for immediate action." (Webster.) See also Colfax County v. Butler County, 83 Neb. 803, 120 N. W.

444, 447. When the necessity for such immediate action ceases, the state of facts ceases to be an emergency. The agency then ceases. The extent of the emergency is a matter of fact to be determined by the circumstances in each case. An indigent, having a legal settlement in Cass county, may be found in Ramsey county on the point of starvation. The instincts of humanity demand that the Ramsey county overseers of the poor prevent starvation, even though they learn immediately thereafter that Cass county is liable for his support. The emergency may continue until the officials can get into communication with the Cass county officials, or until they can have the indigent removed, or to some other time, according to the exigencies of the case. In the case of an accident where a person is rendered unconscious and the place of his legal settlement can not be ascertained for some time, the emergency may continue for a longer period. These are among the conditions which determine when emergency relief can no longer be rendered by the agent of the proper county.

This, however, does not permit a county, such as Ramsey county in this case, to avoid the responsibility of ascertaining as early as possible the place of legal settlement of the indigent, nor does it permit such county to incur a huge bill of expense, based upon its own notion and without due regard to the rights and responsibilities of the other county, such as Cass county. It does away with the selfish tendency to prevent a county from rendering immediate assistance to a needy person having no legal settlement in the county and thus affords an opportunity for the human instinct to work unhampered. The county of legal settlement is not injured as it is required to render assistance to its own, and it is immaterial whether the assistance is rendered by Cass county itself on its own order or by Ramsey county as its agent, so long as the agent renders such assistance only as is clearly within the statute. We have a right to assume that in either case the overseers will act humanely and providently.

It is clear from the facts in this case that all of the relief furnished by Ramsey county was not emergency relief, and to the extent to which it was not emergency relief Ramsey county cannot recover from Cass county. It is conceded that an emergency did arise justifying action on the part of Ramsey county; but it is clear that a large part of the cost incurred is not properly chargeable to Cass county.

However, so far as plaintiff is concerned it is entitled to judgment in full as against Ramsey county. The judgment of the court is correct, holding Cass county liable for emergency relief; but the case is remanded to the district court to determine when the emergency ceased and what portion of the relief furnished was properly emergency relief.

CHRISTIANSON, Ch. J., and NUESSLE and MORRIS, JJ., concur.

SATHRE, J., did not participate.