BIGHAM *v.* LEE COUNTY.

(Division B.   Jan. 30, 1939.)

[185 So. 818.   No. 33543.]

I. L. Sheffield, of Fulton, for appellant.

140

Mitchell & Clayton, of Tupelo, for appellee.

**Ethridge, P. J.**, delivered the opinion of the court.

The appellant, W. W. Bigham, filed a suit against Lee county for the value of bills of lumber amounting to a total of $613.62 and interest, alleging that on the 4th day of September, 1935, one, Lee Riley, was a duly qualified and acting supervisor in and for the second district of Lee county, while the plaintiff was engaged in the lumber business; and that he sold lumber to the said Lee Riley for the use of the county and district, the total number of feet sold on any order being, in each instance, less than $100 in value. That before making the sales to Lee Riley, the said supervisor, the latter had presented an itemized list of the lumber desired to Robert Riley, a man engaged in the lumber business, whose bid thereon was for $29 per thousand feet. That Lee Riley had likewise submitted a list of lumber desired for the county

to another dealer in lumber, Clarence Blankenship, whose bid was for $27 per thousand feet. That the list was then presented to the appellant, W. W. Bigham, who agreed to furnish the lumber for bridges at $25 per thousand; and that he did deliver the lumber for that price, at the home of Lee Riley, in the second supervisor's district.

It appears from the exhibits to the declaration that the bills for lumber were submitted or made out in part, so that none of the several itemized accounts would exceed $100; but that the total of these bills amounted to $613.62, as above stated. The accounts, as presented to the Board of Supervisors of the second district, in each instance read substantially as follows: ''Lee County Dr. to W. W. Bigham. Sept. 5, 1935. Dr. to W. W. Bigham for bridge lumber—3007 at $25.00 per thousand—$75.17.'' To this account was attached a certificate reading as follows: ''I, Lee Riley, member of the Board of Supervisors of Lee county, Mississippi, in and for the second district of said county hereby certify that during the year 1935 the second district of said county had a contract with Lee Easterly for the delivery of bridge lumber to my home for the second district of said county, same to be paid for at a price fixed in the contract but that during said year I called upon the said Easterly and he failed and refused to deliver the lumber; that on September 5, 1935, certain bridges in my district needed repairs and rebuilding and being unable to secure the lumber from the man who had the contract to furnish same I made out the above list of pieces of lumber needed totaling 3007 feet to be of specifications required for bridge lumber and I submitted the above list to two dealers in lumber; that one of said dealers was Will Smith and that his bid to furnish said lumber was at $30.00 per thousand, and I submitted said list to Robert Riley and his bid thereon was $29.00 per thousand, and that I also submitted said list to Clarence Blankenship and that his offer to furnish said lumber was $27.00 per thousand, and that W. W. Bigham was

presented by me with said list and he agreed to furnish same at $25.00 per thousand and this being the lowest bid made I awarded said contract to him and I further certify that he complied therewith by delivering said lumber at my home in said district. I further certify that the said itemized statement above is a true and correct copy of the supplies needed at the time and is a true and correct copy of the supplies the bids on which I procured from the parties above mentioned and that same was purchased from the said W. W. Bigham and the bill for the same was and is hereby approved by me. The above order was filled on September 5, 1935, by being delivered to my residence and the amount thereof is $75.17. This the 5th day of September, 1935.''

The various other accounts were accompanied by substantially the same statements, except as to number of feet, and amount, by Lee Riley.

The Board of Supervisors rejected the account at its meeting in November, 1935. It appears that a contract had been awarded to another dealer in lumber to furnish the county with the lumber desired at the figures named in the contract; and it appears from the testimony of the former supervisors, Riley, whose term expired January 1, 1936, that he applied to the said person having the contract, and that he would not furnish the lumber desired. It appears from the testimony that the bills here involved were for the repair of bridges which had become old and dangerous not for repairing bridges damaged by floods and the like. It also appears from the testimony that the bills were not itemized and presented to the respective bidders as special items needed, but that the deals were for lumber to be delivered at the home of Lee Riley, the supervisor, for use of the district, at a certain rate per thousand, orders to be filled as presented. And, also, that the statements presented to the Board of Supervisors did not specify the names of persons to

whom the bids had been presented, and the prices at which they had offered to furnish the lumber.

It further appears that the bridge to which the bulk of the lumber was applied consumed more than $100 worth of the material; and that the items of less than $100 worth of lumber were arrived at by dividing the total amount of lumber into lots of less than $100; but the aggregate amounted to more than that sum. After Riley went out of office, and after the claim had been rejected while he was in office, in the latter part of 1936 he filed the certificate above mentioned with the Board of Supervisors, and again had the account presented for allowance to W. W. Bigham, with certificates prepared under the direction of an attorney. The board again disallowed the claims, and suit was brought in the county court, where it was submitted to a jury for decision. The jury found for the plaintiff in the amount sued for, from which judgment an appeal was prosecuted to the circuit court upon a bill of exceptions embracing the evidence and instructions and the rulings of the county court, which rulings included a refusal of the peremptory instructions requested by the county.

The circuit judge was of the opinion that there was error in the record, and reversed the case, and the cause was submitted to the circuit judge without a jury, to be tried de novo upon the evidence contained in the county court record, and other evidence produced before the circuit judge. The circuit judge found in favor of the county, from which finding this appeal is prosecuted. Section 6064 of the Code of 1930, under the chapter on public purchases, reads as follows: "All boards of supervisors, boards of school trustees of the common schools and all boards of mayor and aldermen of municipalities shall purchase their supplies for public works, and for public buildings, and for public constructions, upon competitive bids, letting contracts therefor for periods of not more than twelve months in advance; and no individual

member of any such board shall, in any case, purchase any such supplies, nor shall any such board ratify any such purchases made by any individual member thereof or pay for the same out of public funds; provided that in case of emergency any such purchase, not exceeding one hundred dollars, may be made by an individual member without competitive bidding, after having submitted an itemized statement of the supplies needed to at least two dealers in the supplies sought, and shall purchase from the lowest bidder; and provided, further, that the individual member so purchasing shall approve the bill presented therefor, certifying in writing thereon to whom such itemized statement was so submitted and the sum bid by the dealers not bought of it.''

Also, under section 246, Code of 1930, it is provided that contracts shall not be made in vacation, and that individual members shall not make contracts, except in special cases, provided for by law; ''A board of supervisors shall not empower or authorize any one or more members of such board, or other person, to let or make contract for the building or erection of public works of any description, or for working public roads, in vacation or during a recess of said board; except in cases of emergency when a bridge or road has been or is about to be damaged by floods or otherwise, for which special provision is made in the chapter on roads and except in other special cases elsewhere provided; but all other contracts shall be made and approved by said board in open session, and it shall be the duty of the board of supervisors to accept the lowest responsible bid for the erection or construction of all public buildings, bridges or public works, or for the execution of any other contract; and any bidder will be deemed responsible who will enter into bond, with sufficient sureties, according to law, to be approved by said board, in double the amount of the bids made by such bidder, for the prompt, proper and efficient

performance of his contract; and all contracts made in violation of any of the provisions of law shall be void."

We think that in this case the requirements of these sections of the Code were not complied with, and that the manner of making these contracts was a plain evasion of these requirements. See American Disinfecting Co. v. Oktibbeha County, Miss., 110 So. 869; Franklin County v. American Disinfectant Co., 153 Miss. 583, 121 So. 271.

The manifest purpose of the statutes is to safeguard public contracts, and to secure competitive bids from parties interested, to secure to the public fair contracts, and the advantages of competition. It was recognized that there would be emergencies, where action must be taken speedily; but it was not contemplated that purchases might be made for less than $100 when no emergency existed. In 2 Words and Phrases, Second Series, p. 255, emergency is defined as, "An event or occasional combination of circumstances calling for immediate action, pressing necessity, a sudden or unexpected happening, exigency." Citing cases. "The word 'emergency' is defined in Cent. Dict. as follows: 'A sudden or unexpected happening; an unforeseen occurrence or condition; specifically, a perplexing contingency or complication of circumstances. A sudden or unexpected occasion for action; exigency; pressing necessity.' " Citing cases. "The word 'emergency' signifies some sudden or unexpected necessity, requiring immediate or at least quick action." Numerous other definitions of similar import are given in Words and Phrases, under the title "Emergency."

There is an insufficient showing of an emergency here, as well as failure to comply with the requirements of the statute itself, and it results that the judgment must be affirmed.

Affirmed.