Smith *v.* Crown Rigs, Inc., et al.

No. 42494          January 7, 1963          148 So. 2d 195

*R. O. Arrington, Jr.,* Hazlehurst, for appellant and cross-appellee.

*Watkins & Eager,* Jackson, for appellees and cross-appellants.

JONES, J.

On a hearing before the attorney-referee it was stipulated that claimant had been injured in the course and scope of his employment and that his wages at the time of the injury were $121.67 per week. After a hearing the Commission found that he was temporarily, totally disabled from January 14, 1958 to April 1, 1959, and thereafter was partially disabled beginning April 2, 1959. Compensation at the rate of $25 per week was ordered from November 15, 1958 to April 1, 1959, the time of total disability. And it was further found that since April 2, 1959 he was and had been permanently partially disabled, and that beginning April 2, 1959, he be paid at the rate of $25.00 per week, the Commission finding that his loss of wage earning capacity was in excess of $37.50 per week. It was further ordered that the defendants pay the penalties provided by Sec. 13(e) of the Act; to pay the costs of medical services and supplies incurred or to be incurred as a result of the accident aforesaid.

The case was appealed to the circuit court and the learned circuit judge found that the Commission was wrong, holding that the finding of fifteen percent permanent partial disability was sufficiently substantiated, but that the evidence in the record as to the loss of wage earning capacity was not sufficient to support the finding of a loss in excess of $37.50 per week. The circuit judge therefore affirmed the order of the Commission as modified and ordered the case remanded to the Commission for a proper determination of the loss of wage earning capacity.

The employee appeals and assigns as error that the circuit court was in error in saying that the evidence did not support a finding of loss in excess of $37.50 per week in wage earning capacity. The employer and carrier cross-appeal and assign as error that (1) the circuit court erred in not finding that the coccyx condition of the claimant was not the result of the initial injury; (2) if mistaken in this, then the carrier assigns as error that the circuit court should have found that the condition of coccyx displacement had healed and there was no loss in earning capacity as a result of same; (3) that the Commission and court erred in finding the maximum recovery date was April 1, 1959, rather than January 11, 1959; (4) that the Commission and court erred in assessing penalties in the cause, and (5) the Court and Commission erred in finding that the carrier was responsible for all medical expenses, including those of Dr. Aiken and Dr. Moore, when no request was made by the claimant to have the carrier furnish such medical care or give it any opportunity to do so.

The only points argued by the cross-appellant are (1) that the circuit court had substantial evidence before it on which to deny any further benefits than those that had already been paid; (2) that the penalty in the cause should have been removed; (3) that the medical bill of Drs. Aiken and Moore arose at the request only

of the claimant on his own motion and without having apprised the carrier that he desired further medical examination and attention.

The evidence showed that the claimant, while employed by a drilling company in the Little Creek Oil Field of Lincoln County, Mississippi, was hit by tongs weighing about 1000 pounds. He had been working as a roughneck on drilling rigs off and on since the first World War. As a boy he was a farmer, then worked in the shipyard a while during the war. All of his work had been either in farming or as a roughneck in and around drilling rigs, or in other manual endeavors. He testified he had not been able to work since November 15, 1958, the date of his injury, because his back bothered him. If he walked too much, it bothered him at night so that he had to put poultices on it and his legs would go to sleep at night. He gave a description as to his pains and the way his legs were moved to relieve the pain. He said he had not worked for a salary anywhere since November 15; that he had been living in a house with his mother in District 3 in Copiah County, where his mother had a farm; that he attempted to help her do a little work there, but if he works with the hay, his back bothers him or if he lifts any feed, it bothers him; that if he does much walking, his back bothers him. He said he had tried to do a full day's work around the farm but has not been able to do it; that he has tried to do a little hunting but has not been far away from home because his back hurts and he cannot keep walking; that he has to sit down and cannot go far; that work as a roughneck has been available to him since he was injured but he was unable to do the work. A well was drilled near his mother's home about two months before the hearing and he had a chance to go to work there, but did not think he could do the work; that if he exerts himself for a day, at night the soreness will get down in his hips and into his legs.

The first doctor he saw was Dr. Atkinson of Brook-haven, who examined him, treated him, and finally discharged him as able to return to work on January 11, 1959. He then went to Dr. Aiken of Hazlehurst, who was his regular physician. Dr. Aiken examined him, gave him tablets and shots to permit him to sleep at night, and then referred him to Dr. Purvis. On cross-examination he admits he has handled a little feed but that would give him back trouble, that is, picking up sacks or buckets of feed. He said his back hurt him for a couple of weeks prior to the hearing worse than it ever had, when he tried to unload a load of hay. If he walks around the farm it bothers him. He said a neighbor wanted him to oversee some fence fixing and he had some colored boys to help and they did the work; that he raised three or four acres of corn with help, and has helped unload some hay (baled hay) by slipping the bales off the truck. He does not claim to be totally disabled. He has handled lumber and used a hammer and saw a little while at the time; he has plowed land with a tractor, and hauled a trailer behind the tractor; he has cut the pasture with a tractor and piled the brush, using a bush-hog; he says the brush was in the pasture and the pasture was pretty smooth, but admits some of it was over uneven land. He drives an automobile and is able to get around in a car and a tractor. He testified there was as much difference between roughnecking and farming as there is ''between daylight and dark'' but contended that all the work he did, or tried to do, on the farm was only for a short space of time and that he would have to quit after he worked a little while. Some of his neighbors testified they had seen him doing little jobs around the place; that he had complained to them about his back hurting and that he had had no steady job since he was injured. They testified he would take his time in what he was attempting to do and was never in a rush; that he had to take things easy, and they had

never known of his having any physical difficulties prior to the accident in November.

Dr. J. M. Moore, an orthopedic surgeon of Vicksburg, had examined the claimant four times. He was of the opinion that claimant reached maximum medical recovery on or before April 1, 1959, and that the claimant had a permanent partial disability of twenty-five percent. He was further of the opinion that claimant was not able to do roughnecking work in the oil field, and stated that claimant had a fifteen percent permanent partial disability as a result of a fracture of the coccyx.

Dr. R. M. Aiken of Hazlehurst, a general practitioner, testified that he examined the claimant for the first time in February 1959, and his examination revealed a tenderness at the lower part of his spine and muscle spasms at that region. He also found that claimant's coccyx was tender specifically at the lower end, and x-rays revealed a displaced coccyx which had separated and broken off on the balance of the coccyx. He last saw claimant in April 1961. He was of opinion that the broken and displaced coccyx caused the claimant partial disability as far as doing any type of manual labor requiring walking or lifting. He placed the disability at a twenty or twenty-five percent permanent partial disability.

The defendant placed some special investigators on the stand who testified they saw and took pictures of the claimant doing the jobs around the farm about which he had testified, but their testimony showed that these activities only lasted for a short period of time — from fifteen minutes to maybe an hour or hour and a half.

Dr. George Purvis, an orthopedic surgeon of Jackson, Mississippi, examined claimant in March 1959, and among other things found as a diagnosis "probable healed subluxation of the coccyx." It was his opinion that the claimant had no disability and was able to pursue his oil field work. He again examined the claimant in No-

vember 1959, and said he could find no evidence of disability in the back that he could attribute to the claimant's accident and was of the opinion that he had no permanent disability and could return to his oil field work. On these conflicting statements the Commission found that he was permanently disabled to the extent of fifteen percent since April 2, 1959.

We think the testimony was amply sufficient to sustain the finding of the Commission as to the extent of the injuries. As heretofore stated, the amount of his weekly wage was stipulated at $121.60. We think the Commission was justified in finding that his loss of wage earning capacity as a result of the injury was in excess of $37.50 per week. We think they were justified in finding that the "little piddling jobs" he did around the farm could not come on a wage basis within $37.50 per week of $121.60 per week. It is our opinion that the learned circuit judge was in error in holding that the evidence was insufficient to sustain a finding of loss of wage earning capacity in excess of $37.50 per week.

We think the evidence was ample to justify the finding by the Commission that the permanent partial disability was a result of the accident shown. As far as penalties are concerned, this is a matter largely within the discretion of the Commission and we do not think the Commission was manifestly wrong; therefore, we are not disposed to interfere with the exercise of their discretion in this case.

The requirement by the Commission and the lower court to have the defendant pay the cost of medical services and supplies incurred, or to be incurred, as a result of the injury must be modified to this extent: The record shows without dispute that Dr. Aiken was called into the case by the claimant, himself, without having requested further service from the employer, and that Dr. Aiken referred the claimant to Dr. Moore. Under these facts we hold the limit of liability on the

bills of these two doctors to be the $100 provided by Sec. 7 (e) of the Act, which is Sec. 6998-08(e) of the Code of 1942. See Ingalls Shipbuilding Corp. v. Byrd, 215 Miss. 234, 60 So. 2d 645, and Webster Construction Co. v. Bates, 227 Miss. 207, 85 So. 2d 795.

The attorney for the claimant has filed a motion in this Court for the allowance of an attorney's fee of 33-1/3%. This motion is sustained with the understanding, of course, that the 33-1/3% of the recovery will cover all services rendered in all courts and before the Commission.

The cause is reversed and remanded to the Commission for further action not inconsistent herewith.

Reversed on direct appeal; affirmed in part and reversed in part on cross-appeal, and remanded.

*Lee, P. J., and Gillespie, McElroy and Rodgers, JJ.,* concur.