JONES, Justice:
This workmen’s compensation case comes here with the only issue for us to determine being the correctness of an order of the Commission, affirmed by the Circuit Court of Jackson County, insofar as it allows medical expenses.
The expenses involved here are those incurred without authorization of the employer ; the authority for which, in pertinent part, is found in Section 6998-08 of Mississippi Code of 1942 Annotated (1952) on medical expenses, which reads:
If the employer fails to provide the same, after request by the injured employee, such injured employee may do so at the expense of the employer. The employee shall not be entitled to recover any amount expended by him for such treatment or services except in emergency cases, unless he shall have requested the employer to furnish the same and the employer shall have refused or neglected to do so, or unless the nature of the injury required such treatment and services and the employer or his superintendent or foreman having knowledge of such injury shall have neglected to provide the same * * *.
On April 28, 1966, Appellee Holcomb reached down to lift a certain gear whereupon he felt his back “pop.” Appellee continued to work, however, until May 16, 1966, on which date he informed his “leaderman” of his injury, whereupon ap-pellee was sent to the yard hospital. He there talked to the one in charge of insurance and medical matters, as well as safety and fire protection. Appellee reported the accident to this gentleman, who could not understand how he could have received the injury and had continued to work for over two weeks, and that same day he saw and was examined by a company doctor. The record is silent as to what instructions were given appellee as to returning to the *20 company hospital or doctor, but it is clear that appellee never again reported there or requested, or advised that he needed or desired further treatment.
Appellee Holcomb spent the night of May 16 at his home near Lucedale. The morning of the 17th, while returning to work in a car with other employees, he complained of pain and of not having slept the night before. When they crossed the Moss Point Bridge and stopped at a cafe, appellee stated he could go no further and requested to be returned home; he was carried back to Lucedale by the driver of the car. (Lucedale is thirty or more miles from Moss Point, whereas Moss Point is about six or eight miles east of Pascagoula where the appellant’s plant and hospital are situated).
When appellee was taken back to Luce-dale, he went immediately to his family physician, whom, he said, he wanted to look after him. In fact, Holcomb testified that his family physician was the only one he thought about. On being recalled for further testimony, appellee stated he was afraid if he returned to Pascagoula, he would have to walk a considerable distance to the yard hospital. However, the proof showed the company maintained an ambulance and a station wagon to convey employees to the hospital. On these facts, appellee asserts an emergency existed.
At Lucedale, appellee was given a “shot” to relieve pain and put in traction where he remained eight days. Holcomb’s family physician secured an appointment for him with Dr. Whigham at Pascagoula. Dr. Whigham placed appellee in the hospital at Pascagoula (not the company hospital), where he remained about fifteen days. Dr. Enger of Pascagoida also saw appellee, performed a myelogram, and operated. Appellee then returned to his home near Lucedale but continued to suffer and returned to the same Pascagoula hospital, had another myelogram, and another operation, and was released about July 22. Appellee continued under Dr. Enger’s care and was under his treatment at the time of the hearing, February 14, 1967.
As heretofore stated, it was much farther from Moss Point to Lucedale than from Moss Point to Pascagoula. Further, we judicially notice the 1960 census which shows Moss Point was at that time a city with a population of 6,631. No effort was made, nor thought given to locating a doctor there.
There is no evidence that the company or its officials knew of appellee’s actual condition or were ever advised of it (after the only trip to the company hospital — two and one-half weeks or more from date of injury), so as to have an opportunity to supply necessary treatment.
Appellee argues there was an “emergency.” Having worked over two weeks after the injury, it is evident appellee did not appreciate the nature and seriousness of his injury and the company official in charge of medical treatment, from what the record shows, did not appreciate it either; therefore, the reasoning of this Court in Ingalls Shipbuilding Corporation v. Byrd, 215 Miss. 234, 249, 60 So.2d 645, 651 (1952) seems particularly appropriate:
Let it be said that appellee did not appreciate the nature and seriousness of his injury, so neither did the company. He chose his own course, and sought hospitals and doctors of his own choosing. No request was made of the company to furnish such services. Even a liberal construction of the statute can not amend it by judicial legislation. His very ignorance of the compensability of his injury has been availed of to justify an award for compensation. We must follow a consistent course by disallowing the award for medical and doctor’s bills, since, regardless of the reason therefore, he failed to avail of the offer of the company, informal though it was, and sought out his own sources of aid. Nor do we think there was an emergency sufficient to excuse compliance with the statute. His trip to Mobile for examina *21 tion was impelled not by certainty but by uncertainty. An emergency must allow of no reasonable alternative consistent with the preservation of life or irreparable injury from delay. On the dates when he was taken to the George County Hospital or to Mobile, he could, had he elected to do so, have requested that these services be furnished by the appellant. A denial of this award, however harsh it may be construed by an employee, points up the purpose of the Act to grant compensation under liberal interpretation, but at the same time to require, in the interest of the carrier and the employer, compliance with prerequisite conditions. We are constrained, therefore, to amend the award, by eliminating the items of medical and hospital bills.
Notice the Court’s definition of emergency and compare the facts herein.
Teague v. Graning Hardwood Manufacturing Company, 238 Miss. 48, 117 So.2d 342 (1960) required the company to furnish eye treatment and repair of eyeglasses where the foreman knew employee had been struck in the eye and his glasses shattered but did not send him to a physician. The facts there are easily distinguishable from the instant case.
Following Teague was the Court’s holding in Smith v. Crown Rigs, Inc., 245 Miss. 311, 148 So.2d 195 (1963). That case was decided under Subdivision (e) of Section 6998-08, providing that where an employee “believes that his best interest has been prejudiced by the findings of the physician designated by the employer” he may have an examination by a doctor of his choice at an expense not to exceed $100. No claim is made here under that subdivision. However, the facts and holding in Smith are apropos here. The employer and carrier had cross-appealed and one assignment of error was that error was made in allowing all medical expenses, including the bills due Dr. Aiken and Dr. Moore, when no request was made to carrier to furnish such further care. The first doctor, in Smith, to examine claimant was Dr. Atkinson, who examined claimant, treated him, and discharged him as able to return to work. Claimant then went to his regular physician, Dr. Aiken, who examined him and referred him to Dr. Purvis. Under these circumstances, our Court stated:
The requirement by the Commission and the lower court to have the defendant pay the cost of medical services and supplies incurred, or to be incurred, as a result of the injury must be modified to this extent: The record shows without dispute that Dr. Aiken was called into the case by the claimant, himself, without having requested further service from the employer, and that Dr. Aiken referred the claimant to Dr. Moore. Under these facts we hold the limit of liability on the bills of these two doctors to be the $100 provided by Sec. 7(e) of the Act, which is Sec. 6998-08(e) of the Code of 1942. See Ingalls Shipbuilding Corp. v. Byrd, 215 Miss. 234, 60 So.2d 645, and Webster Construction Co. v. Bates, 227 Miss. 207, 85 So.2d 795. 245 Miss. at 319-320, 148 So.2d at 198.
The only definition of “emergency” found by us in our Reports is in Bigham v. Lee County, 184 Miss. 138, 139, 185 So. 818 (1939), where this Court adopted the following definitions:
In 2 Words and Phrases, Second Series, p. 255, emergency is defined as, “An event or occasional combination of circumstances calling for immediate action, pressing necessity, a sudden or unexpected happening, exigency.” Citing cases. “The word ‘emergency’ is defined in Cent. Diet, as follows: ‘A sudden or unexpected happening; an unforeseen occurrence or condition; specifically, a perplexing contingency or complication of circumstances. A sudden or unexpected occasion for action; exigency; pressing necessity.’ ” Citing cases. “The word ‘emergency’ signifies some sudden or unexpected necessity, requiring immediate or at least quick action.” Numerous *22 other definitions of similar import are given in Words and Phrases, under the title “Emergency.” 184 Miss, at 146, 185 So. at 820.
It seems to us, from appellee’s own evidence, that the motivating cause for the return to Lucedale was not an emergency, but appellee’s desire to have his family physician attend him.
Florida in 1949, had a statute making it a crime to practice medicine without being licensed, but made an exception “in case of emergency.” A doctor’s unlicensed assistant was indicted, the facts showing that after unsuccessfully trying to locate his employer, and other doctors, he did assist a lady in the delivery of a baby. The court held this an emergency. Baxter v. State, 47 So.2d 764 (Fla.1950).
The North Dakota Court in construing an “emergency” under the relief laws held in Sisters of Mercy of Devils Lake v. Ramsey County, 68 N.D. 344, 279 N.W. 759 (1938) as follows:
But while the policy of our law makes one county the agent of the other to furnish emergency relief, such agency is limited entirely to relief in an “emergency.” An emergency is “an unforeseen combination of circumstances which calls for immediate action.” Webster. See, also, Colfax County v. Butler County, 83 Neb. 803, 120 N.W. 444, 447. When the necessity for such immediate action ceases, the state of facts ceases to be an emergency. The agency then ceases. The extent of the emergency is a matter of fact to be determined by the circumstances in each case, (emphasis added). 279 N.W. at 763-764.
The Court of Appeals of Kentucky considered an emergency in Powell v. Commercial Standard Insurance Company, 294 Ky. 7, 170 S.W.2d 857 (1943):
The “emergency” that will justify employment by servant of temporary help so as to make master liable for helper’s injury must be sudden and unexpected, such as where servant cannot perform his task without immediate assistance.
One employed to look after business in a distant part of state was not confronted with such “emergency” as would warrant employment of assistant driver without employer’s knowledge so as to render employer liable for employee’s injuries resulting from assistant driver’s negligence, where employee could have reached place of business by railroad or, at least, without driving all night, (emphasis added).
Michigan had this question before its court in McLean v. Eaton Manufacturing Company (a workmen’s compensation case), 286 Mich. 285, 282 N.W. 150, 151, 153 (1938):
The department found that, on the Saturday prior to plaintiff’s hospitalization, his condition w'as very serious and that immediate medical care was required. It said that the circumstances warranted the conclusion that an “emergency” existed, which dispensed with any requirement of notice to the employer. Gage v. Board of Control of Pontiac State Hospital, 206 Mich. 25, 172 N.W. 536, 7 A.L.R. 533. There is no evidence to support this finding of the department. The “emergency” rule of the Gage case requires more than that the plaintiff’s situation be an urgent one. To excuse notice, it must appear that the circumstances are such that there will be an additional delay, dangerous to the life or health of the employee, if efforts are made to contact the employer and afford him an opportunity to furnish the needed medical care. In the instant case, plaintiff was not admitted to the hospital until sometime following Dr. Foust’s diagnosis of pneumonia. There is no showing by plaintiff that his employer could not have been informed of his needs without causing any dangerous additional delay or that any such delay would have been involved in giving the employer the opportunity of selecting a hospital and removing plaintiff thereto.
*23 We hold, therefore, that there was no substantial evidence to support the finding of liability for medical expenses incurred as herein stated and reverse the Commission and lower court on that issue, entering judgment here for appellants.
Reversed and judgment here for appellants.
ETHRIDGE, C. J., and RODGERS, BRADY, and SMITH, JJ., concur.