SHOOK *v.* CARROLL COUNTY.

Division A. Jan. 15, 1951.

No. 37790 (49 So. (2d) 897)

**J. W. Conger,** for appellant.

**Maurice Black,** for appellee.

McGehee, C. J.

The question presented here is whether or not a cause of action was stated by the plaintiff, S. T. Shook, Sr., administrator of the estate of W. R. Shook, deceased, in his amended declaration against the defendant Carroll County, wherein he sought recovery of the sum of $2,-583.20, mainly for labor performed in making repairs, and, incidentally for a few parts furnished in connection with repair of the road machinery of Supervisors District No. 5 of the county at the instance of the supervisor of said district. A demurrer was sustained to the amended declaration, and the suit was dismissed upon the plaintiff declining to further plead or amend.

The amended declaration on file alleged that the decedent, W. R. Shook, was an expert repairman of machinery, including road machinery, such as trucks, graders, bulldozers, tractors and other like machinery, and that he had been operating a repair shop for approximately twelve years, during which time he and his employees had maintained in repair such road machinery of this supervisor's district, and for which labor he had been fully paid throughout these years by the board of supervisors until the period from January 2, 1947 to August 17, 1947, prior to the death of the said repairman on August 19, 1947. The amended declaration also alleged that during the period last aforesaid the itemized bills attached thereto had accrued in the total sum of

$2,583.20 sued for; that during this period, as theretofore, the road machinery of all kinds belonging to the said district would break down on the county roads, and that the decedent, W. R. Shook, would work on them there or tow them into his shop as the necessity required in the making of the repairs; that often the machinery was in a broken-down and dilapidated condition, and that the road hands of the district would have to wait for the making of the repairs; and that the work "was continuously done under the direction of the Supervisors of said County, and on written orders from said Board, and (on) lawful bidding and competition, . . .; that no dispute or misunderstandings or complaints ever arose concerning the work, or the reasonableness and correctness of the charges for said labor and materials; that said itemized statements (attached to the amended declaration) were made out by intestate . . .; that said statements were presented to said county, after they had been made out by intestate and approved under the direction of said board, and accepted as approved work by Marion Ely, a member, who inspected and directed what should be done and what should not be done to said machines, and said Board from the meeting of the Board in February and August, 1947, inclusive, informed intestate, from time to time, that insufficient funds were in the treasury with which to pay the said indebtedness, but that as soon as funds accumulated in the account for that purpose same would be paid, and said accounts were therefore continued from time to time—month to month—; that prior to the month of January, 1947, when intestate would be due money for similar work, the County would pay same, . . .; that with reference to the particular invoices sued on, intestate was asked by said Board to withhold the collection of same until sufficient funds went into the paying channel and then the account would be paid; . . . that in January, 1948, said Board met and made a partial allowance of said accounts . . . and

then because of reasons unknown to plaintiff, except for a change in administration, some of the members of the Board met in . . . a special session and directed the clerk not to issue the warrant for some $600.00 of said accounts that were allowed . . .." This declaration further alleged "that on demand of plaintiff either to pay same or reject it at the subsequent meeting of the Board, said Board rejected the claim, hence this suit."

The itemized statements of accounts which were attached to this declaration affirmatively show that all items contained thereon, aggregating the total sum of $2,583.20, were for *work* done by the decedent and his helpers, except a few small items consisting of 1½ dozen bolts for which the decedent charged the sum of $4.80; another item of bolts and nuts at $4.80; two items listed as "handling axes" at $1.00 each; and four couplings for hose pipe at $1.00 each, all of which items were for parts furnished by the repairman merely as an incident to his work as a mechanic and repairman in the upkeep of the said road machinery, and not as a dealer in supplies.

The case was heard in the trial court and is presented here on briefs upon the erroneous theory that the claims presented to and rejected by the board, and sued for herein, were for "supplies for public works, . . ." which are required by Section 9027, Code of 1942, to be purchased upon competitive bids under contracts of periods of not more than twelve months in advance, and which statute prevents an individual member of the board of supervisors, in any case, purchasing any such supplies, and prevents the board from ratifying any such purchases by any individual member thereof, or paying for same out of public funds; provided, that "in case of emergency any such purchase, not exceeding one hundred dollars, may be made by an individual member without competitive bidding, after having submitted an itemized statement of the supplies needed to at least two

dealers in the supplies sought, and shall purchase from the lowest bidder; . . .."

The indebtedness sued for in the case at bar is not for "supplies for public works", but is for *labor* done and performed by a repairman on road machinery belonging to a supervisor's district.

Section 2939, Code of 1942, brought forward as part of Chapter 253, Laws of 1940, provides, among other things, that any district which "owns any such machinery or equipment, may at any time have the same repaired, or purchase necessary repair parts therefor, where it is necessary to use such machinery or equipment in constructing, reconstructing, or maintaining the public roads, whether or not there is then a sufficient amount in the fund out of which the cost thereof must be paid to pay the same; . . .."

The cases relied on in the briefs of both the appellant and the appellee herein, such as Attala County v. Mississippi Tractor & Equipment Co., 162 Miss. 564, 139 So. 628; Bigham v. Lee County, 184 Miss., 138, 185 So. 818; Duncan v. Board of Supervisors, Miss., 4 So. (2d) 219; Smith County v. Everett, Miss., 8 So. (2d) 456, involved the *purchase of supplies* in each instance, and they are, therefore, not controlling in the case at bar.

Section 8330, Code of 1942, provides, among other things, that "The board of supervisors of any county may purchase and hire teams, implements, and material, and employ labor, and work, construct, reconstruct and maintain the public roads and build bridges under the direction of a competent road commissioner, to be employed by the board, in its discretion, or under the direct supervision of the board of supervisors; and may do any and all things necessary to be done to work, construct, reconstruct and maintain the public roads, and build bridges as herein provided."

Section 8335, Code of 1942, provides, among other things, that "Labor shall be employed for such work and material, equipment and supplies shall be purchased by

or under the direction of the board of supervisors, or the road commissioner, if a road commissioner be employed."

Section 8343, Code of 1942, provides that "The supervisor of each district in each county is to have and is required to exercise general supervision over the public highways of his district."

Section 8346, Code of 1942, provides, among other things, that "All labor for working, constructing, and maintaining said roads shall be employed by such commissioner, if there be a commissioner, and if no such commissioner be employed all such labor shall be employed by *or under the direction of the board of supervisors.*" (Italics ours.)

Section 2917, Code of 1942, reads as follows: "All contracts by boards of supervisors for any public work not otherwise specifically provided for, where the amount of the contract shall exceed one hundred dollars, shall be made upon at least three weeks' public notice by advertisement in a public newspaper of the county, if there be one, and if not, by posting written or printed notices at the courthouse door and in each supervisor's district of the county, which notice shall distinctly state the thing to be done, and invite sealed proposals, to be filed with the clerk, to do the work, or such contract may be let out at the door of the courthouse at public outcry, as the board shall direct; and in all cases, before the notice shall be published or posted, the plans and specifications for the work shall be filed with the clerk and there remain; and the board shall award the contract to the lowest bidder, . . .."

It does not appear that a road commissioner was employed in Carroll County under Sections 8330, 8335, or 8346, so far as the allegations of the amended declaration are concerned.

It is obvious that under Section 2917, supra, it would be impracticable for the board to give three weeks' notice to repairmen of an intention to have road machinery repaired and to file the plans and specifications for the

work with the clerk of the board, "which notice shall distinctly state the thing to be done", since it would be necessary in many instances that the repairmen should dismantle some of this cumbersome and complicated machinery in order to determine "the thing to be done" and before any plans and specifications therefor could be filed with the clerk. Therefore, the Legislature enacted Section 2939, supra, evidently in order to obviate the difficulties that would be encountered in an attempt to comply with Section 2917, supra, in regard to employing labor to repair road machinery owned by the county or a supervisor's district thereof, and also to facilitate the making of such repairs in order that the road work may be carried on expeditiously.

Nor do we think that Section 2924, Code of 1942, which provides, among other things, that "A board of supervisors shall not empower or authorize any one or more members of such board, or other person, to let or make contract for the building or erection of public works of any description or for working public roads, in vacation or during a recess of said board; except in cases of emergency when a bridge or road has been or is about to be damaged by floods or otherwise, for which special provision is made in the chapter on roads and except in other special cases elsewhere provided; but all other contracts shall be made and approved by said board in open session, and it shall be the duty of the board of supervisors to accept the lowest responsible bid for the erection or construction of all public buildings, bridges or public works, . . ." is to govern the making of repairs or purchasing necessary repair parts therefor, at any time, where the machinery or equipment is owned by the county or a district within the meaning of Section 2939, supra, hereinbefore discussed. Section 2924, supra, was brought forward from Section 246, Code 1930, whereas Section 2939, supra, was brought forward from Chapter 253, Laws of 1940, when it was first enacted.

In considering whether either Section 2917 or 2924, supra, when construed in connection with the subsequently enacted statute, Section 2939, would require three weeks' notice to be published, distinctly stating the thing to be done, and requiring plans and specifications for the work to be on file with the clerk, it is to be remembered that when road machinery, such as tractor, grader. or bulldozer breaks down, it could not be repaired "at any time" if there had to be a delay of three weeks for advertising the letting of such contract, the notice stating distinctly what is to be done, and if plans and specifications for the work had to be on file during the period covered by the notice. ██ ██ In other words, it seems clear that it was intended by the Legislature that when a county or supervisor's district owned road machinery and equipment, the county or the district should have the right to have the same repaired in order that the working and maintaining of the roads could go on without unnecessary delay and without the employees of the county having to remain idle while the contract for the machinery was being advertised to be let.

We are of the opinion that when all of the statutes hereinbefore mentioned are construed together, it is permissible under Section 2939, Code of 1942, that a county or a supervisor's district which owns road machinery and equipment may have the same repaired by employing labor for that purpose, and that the law does not require that the employment of labor for repair work on road machinery shall be on competitive bids, following the usual advertisement of an intention to have such property repaired for use, or forbid a contract with a repairman until at the next meeting of the board. There is no way of determining in advance with any reasonable degree of certainty what has to be done in order to repair brokendown machinery or how much labor will be required for the work of repairing the same. The necessity for such repairs is constantly recurring, ac-

cording to the allegations of the declaration, and the Legislature in the enactment of Section 2939, Code of 1942, Section 8 of Chapter 253, Laws of 1940, evidently recognized the fact that it rarely occurs that a mechanic or repairman can intelligently forecast the amount of labor that will be required to repair a heavy and complicated machine until he has first dismantled the same and ascertained what needs to be done to make the necessary repairs; and for that reason it granted authority to a county or a district, owning road machinery, to have the necessary repairs made thereon *at any time.*

The statute last above referred to was enacted subsequent to the decision in Attala County v. Mississippi Tractor & Equipment Co., supra, which case involved the purchase of articles for the repair of, and use in connection with, road machinery, and also subsequent to the case of Lee County v. James, 178 Miss. 554, 174 So. 76, which involved regular employment of the appellee, without a contract on the minutes, to work on the county roads, and for which work he was suing for a balance due. This latter case involved neither labor performed on nor parts furnished in the repair of road machinery. Neither the price of labor nor the price of parts for the repair of road machinery was involved in either the case of Duncan v. Board of Supervisors or Smith County v. Everett or Bingham v. Lee County, supra.

We do not intend by this decision to depart from the principles and general rule announced in the case of Lee County v. James, supra, and other similar cases, as to the necessity for contracts for labor under regular employment and contracts for public works, public construction, and for the purchase of supplies for public works, etc., to appear on the minutes of the board of supervisors in order to be valid. Nor are we departing from the requirements of Section 9027, Code of 1942, in particular, requiring the purchase of supplies for public works or public construction to be made on competitive bids as therein required. We merely hold that Sec-

tion 2939, Code of 1942, not cited in the briefs here and evidently not called to the attention of the trial court, and which was enacted subsequent to all of the other statutes hereinbefore mentioned, when construed in connection with them, was intended to authorize the repair of road machinery owned by the county or any district thereof, and the employment *at any time* of the labor necessary for that purpose, and to purchase the repair parts needed therefor. It is understood, however, that the amounts charged by a repairman for labor done and performed and parts furnished in the repair of such road machinery are subject to the approval of the board of supervisors as to whether the charges are reasonable before the claim shall be paid.

The amended declaration affirmatively discloses that no contract in favor of the repairman was entered on the minutes of the board of supervisors. Nor could a contract have been intelligently made for the doing of the work involved, specifying in advance and distinctly what he was to do under an employment or what he should receive for the hours of labor to be performed, and which are undeterminable in advance.

We are of the opinion that the plaintiff was entitled to a trial on the merits of the allegations of his amended declaration, and an opportunity to prove the same; that skilled labor for the repair of cumbersome and complicated road machinery is not required to be employed on a competitive basis in the emergencies alleged in the declaration under Section 2939, Code of 1942.

Reversed and remanded.