WEBSTER CONSTRUCTION COMPANY, et al. *v.* BATES

No. 39912        March 12, 1956        85 So. 2d 795

208

*Snow & Covington,* Meridian, for appellants.

*Watkins & Buckley,* Meridian, for appellee.

**Kyle, J.**

This case is before us on appeal by Webster Construction Company and its insurance carrier from a judgment of the Circuit Court of Lauderdale County reversing an order of the Workmen's Compensation Commission and increasing an award of compensation made by the commission to Charles Andrew Bates, an employee of the Webster Construction Company, for permanent partial disability resulting from injuries sustained by him while engaged in the performance of his duties as an employee of the construction company.

The facts developed during the hearing before the attorney-referee on August 29, 1954, were substantially as follows: Bates was employed by the Webster Construction Company during the first part of June 1953 as an apprentice cement finisher on a school building project at McAdams, in Attala County, Mississippi. His average weekly wage was $34. During the morning of June 10 Bates was finishing concrete. The weather was hot and it was necessary for him to work fast to finish the concrete before it hardened. Bates became dizzy, felt a pain in his chest, and went to the rest room to get a drink of water. He did not return to the job immediately, and a few minutes later was found in a semi-conscious condition down on his knees in a corner of the rest room. His foreman was notified and Bates was carried to Doctor Pickle's office at Kosciusko for a medical examination. The doctor found that he had a fast beat of the heart and advised that "he take it easy" for a while. Bates stayed off the job a day or two and then did light work until the end of the week. He returned to his home in Meridian at the weekend, and during the following week his employer had him examined by Dr. William R. Mitchum, Jr., in Meridian. Doctor Mitchum made a physical examination of Bates at that time. He found no evidence of heart injury or disease, but did find a fast heart beat. He advised Bates' employer that Bates was able to work, and Bates went back to work. Bates quit work, however, about two weeks later because of chest pains and worked no more thereafter for the Webster Construction Company. On September 25, 1953, Bates enlisted in the United States Marines and was sent to a Marine base at Parris Island, South Carolina, where he was given a thorough physical examination. A week later he was assigned to a casualty company, and on October 28, 1953, was given an honorable discharge from the Marine Corps for medical reasons. He then returned to his home at Meridian and had been unable

to work since that time, except for four days that he had worked in a pool room while on a visit in the State of Michigan during the month of December.

The medical testimony offered on behalf of the claimant consisted of the testimony of Dr. John G. Atwood, a general medical practitioner in Meridian, who testified that he had examined Bates on July 12, 1954, and had kept him under observation since that time. Doctor Atwood testified that when he examined Bates on July 12, he found that he had a grossly irregular heart beat, which was noticeably aggravated by moderate exercise in the office. He concluded at once that Bates had suffered an acute heart attack, and had two electrocardiograms made. Both confirmed the presence of very grave cardiac damage, and in view of the fact that there had been such slight improvement during the twelve months or more that had elapsed since the attack, he was of the opinion that the damage was permanent. The doctor stated that Bates was suffering at the time of the trial "from complete loss of the pace-making mechanism, affecting the nervous stimuli, which regulates the heart beat." The doctor was asked whether, on the basis of his original examination prior to making the electrocardiogram, he got the impression that there was any serious defect in the claimant's heart. His answer was "Yes". He was then asked what he based that conclusion on. His answer was, "From the grossly irregular heart beat and the fact that many of the heart beats you hear over the heart don't even reach the pulse in the wrist. That's always a serious condition."

The doctor testified that in his opinion Bates was totally unable to perform any kind of manual labor, and it would be entirely unsafe for him to attempt to engage in any activity that required strenuous exertion. The doctor stated that in his opinion the combination of exertion and overheating was the precipitating factor in the heart attack.

The attorney-referee found that the claimant had sustained an accidental injury on June 10, 1953, that arose out of and in the course of his employment, and that the injury was compensable; that the claimant had been totally disabled from the date of the injury to the date of the hearing on August 29, 1954, and that he had reached his maximum degree of recovery on the date of the hearing; that as a result of the injury the claimant had sustained a permanent partial disability, the exact percentage of which could not be determined from the evidence, thus bringing the case into that classification known as "other cases" set out and described in Section 8, subsection (c), Item 21, of the Workmen's Compensation Act of 1948, as amended. The attorney-referee found that "claimant now has an earning capacity of $17 per week, making a difference of $17 between his average weekly wage on June 10, 1953, and his present earning capacity."

The attorney-referee therefore ordered that the employer and its insurance carrier pay to the claimant compensation for temporary total disability in the sum of $22.67 per week from June 10, 1953, to and through August 29, 1954 (which was the date of the hearing), except for the time he had worked for the Webster Construction Company, the time that he was in the Marines, and the four days he had worked in a pool room in Michigan; and that, beginning August 30, 1954, the employer and its insurance carrier pay to the claimant compensation for permanent partial disability in the sum of $11.33 per week, "so long as said permanent partial disability continues, but not to exceed 450 weeks, as provided in Section 8, Subsection (c), Item 21, of the Mississippi Workmen's Compensation Act." The attorney-referee also ordered that the employer and its insurance carrier pay all necessary medical, doctors' and drug bills incurred by the claimant to date, except the bill of Doctor Atwood, which was denied because the claimant had not

requested further medical treatment from the defendants before incurring that expense, and that they also pay all necessary medical expenses incurred by the claimant in the future because of said injury.

Upon its review of the record the commission by a majority vote of its members amended the findings of the attorney-referee so as to show that, except for the days he had worked as shown by the record, the claimant was totally disabled up to June 25, 1953, and that since that time he had been permanently partially disabled, except for the time that he was in the Marine Corps and except for the four (4) days that he had worked in a pool room in Michigan. And, in keeping with its findings, the commission ordered that the employer and its insurance carrier pay to the claimant $22.67 per week for temporary total disability from the date of the accident up to June 25, 1953, less the number of days that he had worked during that time, and that the employer and its insurance carrier thereafter make payments of compensation as provided for in Section 8, Subsection (c), Item 21, of the Workmen's Compensation Act, based on a loss of fifty per cent (50%) earning capacity, such payments to continue for a period of not to exceed 450 weeks, "less that period of time in which the claimant was in the armed services * * * and an additional four (4) days in which the claimant was employed in Michigan." The commission also ordered that the employer and its insurance carrier pay all medical bills, "but not to include the bill for services of Dr. Atwood," which was denied because the claimant had not requested further medical treatment from the defendants before incurring that expense.

One member of the commission dissented from the findings of the majority. It was his opinion that the claimant had suffered temporary total disability from June 10, 1953, to July 12, 1954, except for the days that he had worked for his employer soon after his injury and the four (4) days that he had worked in a pool room

in Michigan, and that he had suffered a total loss of wage earning capacity since July 12, 1954, and was entitled to receive compensation at the same rate as previously ordered for temporary total disability. The dissenting commissioner was also of the opinion that the employer and its insurance carrier should be required to pay the bill for medical services rendered by Doctor Atwood, as well as the other medical expenses mentioned in the order of the commission.

From the order of the commission, which was concurred in by only two of its members, appeals were taken to the circuit court by the claimant and by the employer and its insurance carrier.

The circuit court after reviewing the record reversed the order of the commission, and adopted in full the findings of fact set forth in the minority report of the dissenting commissioner and the circuit court ordered that the employer and the insurance carrier pay compensation to the claimant for temporary total disability at the rate of $22.67 per week for the period of time beginning June 10, 1953, and continuing to July 12, 1954, except for the time that he had worked for his employer immediately after his injury and the four days he had earned wages in Michigan; and the court further ordered that, beginning July 12, 1954, the claimant be paid compensation at the rate of $22.67 per week for permanent partial disability in accordance with the requirements of Section 8, Subsection (c), paragraph 21, of the Workmen's Compensation Act, as amended, and further that the defendants pay all medical expenses incurred to date, including the bill for medical services rendered by Dr. John G. Atwood, and that the employer and its insurance carrier immediately provide such other medical, hospital, surgical or other care as might be necessary.

Only one point is argued by the appellants' attorneys as ground for reversal of the judgment of the lower court, and that is, that the court erred in reversing the find-

ings and order of the commission and adopting the findings and order recommended by the minority member of the commission.

But we think there was no error in the action of the circuit court in reversing the order of the commission and in entering such judgment as it did enter. We think there is no substantial evidence in the record to support the finding of the commission that Bates was only fifty per cent (50%) disabled after June 25, 1953, and the circuit court had a right to reject that finding.

The only medical testimony offered on behalf of the employer and its insurance carrier was that of Doctor Mitchum, who testified that he had examined Bates on June 17, 1953, and that he found no indication of heart disease at that time. But Doctor Mitchum testified that Bates' heart beat at that time was a little more rapid than usual, and he did not completely rule out coronary heart disease. He stated that he made no electrocardiogram, and at the conclusion of his testimony he said: "Again, I must, in fairness to the patient, say that it is possible that I made an error in judgment."

The claimant's proof, on the other hand, consisted of his own testimony concerning the heart attack which he had on June 10, and the testimony of Reuben Crockett, with whom he was working at the time he had the attack, and the testimony of Leonard Smith, the foreman on the job, who testified that Bates seemed to be pretty sick, and "I thought we had better carry him on to the doctor," and the testimony of Doctor Atwood, who had kept the claimant under observation and treatment for a period of more than thirty days next preceding the date of the hearing. Doctor Atwood's testimony clearly showed that the claimant was wholly incapacitated for work at the time he made his first examination on July 12, 1954, and at the time of the hearing, and that it would be entirely unsafe for the claimant to do anything that required physical exertion. The claimant was 18 years

of age at the time of his injury. The only kind of labor that he was accustomed to perform was manual labor, such as loading and unloading lumber, and the semi-skilled work of an apprentice cement finisher, and it does not appear from the record that the claimant was qualified to pursue any other gainful employment while suffering from the heart condition testified to by Doctor Atwood.

██ ██ Doctor Atwood's testimony, we think, clearly showed that the claimant had no wage earning capacity at the time of the hearing, and Doctor Atwood's testimony on that vital point was uncontradicted. It was not inherently improbable, incredible, unreasonable, or untrustworthy, and in our opinion cannot be arbitrarily rejected. Lucedale Veneer Co. v. Rogers, 211 Miss. 613, 48 So. 2d 148, 53 So. 2d 69; Reyer v. Pearl River Tung Co., 219 Miss. 211, 68 So. 2d 442.

██ ██ We also think that the circuit judge was correct in reversing the order of the commission disallowing the bill of Doctor Atwood for medical services. Section 7 of Chapter 354, Laws of 1948, as amended by Section 5 of Chapter 412, Laws of 1950, provides as follows:

"(e) An injured worker who believes that his best interest has been prejudiced by the findings of the physician designated by the employer or carrier shall have the privilege of a medical examination by a physician of his own choosing, at the expense of the carrier or employer. Such examination may be had at any time after injury and prior to the closing of the case; provided, however, that the charge shall not exceed one hundred dollars ($100.00), and shall be paid by the carrier or employer where the previous medical findings are upset, but paid by the employee if previous medical findings are confirmed."

It is clear from the record in this case that the medical findings of Doctor Mitchum were upset by the testimony of Doctor Atwood, and the medical bill of Doctor Atwood should have been allowed.

The judgment of the circuit court is therefore affirmed.

Affirmed.

*McGehee, C.J.,* and *Hall, Lee* and *Holmes, JJ.,* concur.