507 So.2d 363 (1987)
GENERAL ELECTRIC COMPANY and Electric Mutual Liability Insurance Company
v.
Charles E. McKINNON.
No. 56697.
Supreme Court of Mississippi.
May 6, 1987.
Clifford B. Ammons, Rebecca Lee Wiggs, Watkins & Eager, Jackson, for appellant.
Mary Lou Payne, Jackson, for appellee.
Before ROY NOBLE LEE, P.J., and DAN M. LEE and SULLIVAN, JJ.
SULLIVAN, Justice, for the Court:
This is an appeal from the circuit court of Hinds County, wherein the circuit judge affirmed an award, granted by the Mississippi Workers' Compensation Commission, for Charles McKinnon who was injured in the course and scope of his employment as a result of his hand being caught in a conveyor belt. The circuit judge affirmed the full commission's order which found that McKinnon not only received an injury *364 to the body as a whole, with loss of wage earning capacity, but also found that he suffered a high industrial loss of use of his hand. From this ruling, General Electric Company and Electric Mutual Liability Insurance Company appealed to this Court for relief. Charles E. McKinnon cross appealed.

I.
On October 20, 1981, while employed at the General Electric plant, Charles E. McKinnon was injured in an industrial accident when his hand was caught in a conveyor belt above eye level. A piece of wire protruded from the roller and gouged the flesh from the palm of McKinnon's right hand. The panic bar, or cut-off switch, was located twenty feet away and could not be reached by Mr. McKinnon, who in an effort to free himself, strained his back and shoulder.
Hearings were held in Jackson, Mississippi, on December 17, 1982, and February 14, 1984, on the application of Charles McKinnon for compensation benefits under the Mississippi Workers Compensation Act. Although McKinnon returned to work in June, 1982, he was unable to complete a full shift due to back and hand pain at which time he saw the company physician, Dr. T.K. Williams, who referred McKinnon to Dr. W.B. Thompson, an orthopedic surgeon. After McKinnon's examination, it was the opinion of both Dr. Williams and Dr. Thompson that McKinnon could not return to his previous job, but recommended that he return to work as a coater/unloaded on January 6, 1983. Mr. McKinnon continued to work in this position as a server until the General Electric plant closed subsequent to the appeal hearing before the full commission.[1]
During the hospitalization of Mr. McKinnon and until this time, he saw numerous physicians. It was the opinion of all physicians that Mr. McKinnon suffered from a pre-existing condition, spondylolisthesis, which aggravated his back injury. There were four depositions taken and entered into evidence in this cause with one additional physician's testimony by handwritten medical report, received under Procedural Rule 8 of the Rules of the Mississippi Workers Compensation Commission.
Subsequent to the hearing, the administrative law judge found that Mr. McKinnon sustained a compensable injury and awarded the minimum benefits to the body as a whole with no mention of his hand injury. On appeal, the full Mississippi Workers Compensation Commission found that Mr. McKinnon sustained a compensable injury to the hand with an industrial loss of use, and an injury to the body as a whole with the loss of wage earning capacity in the amount of $67.60 per week. The loss of wage earning capacity was apportioned, due to McKinnon's pre-existing spondylolisthesis, and McKinnon was awarded the minimum benefits to the body as a whole.
Both the employer and carrier appealed the findings of the full commission and upon hearing, the circuit judge affirmed the commission's findings insofar as the awards, but modified such to require statutory penalties.

II.

A.
General Electric first contends that the Workers' Compensation Commission and the circuit court erred as a matter of law in granting an award inasmuch as McKinnon failed to prove "disability" within the meaning of the Workers' Compensation Act, with the resulting loss of wage earning capacity. The employer and carrier do not dispute, at this point, that an injury occurred but now object to the nature of the evidence presented on behalf of McKinnon to illustrate his loss of wage earning capacity.
McKinnon testified that at the time of the accident he received an hourly wage of $8.31, but had he continued to work on the same job, he would be making $10 per hour today. McKinnon testified that as a server, he was tending the position of someone who was off that station for some *365 reason or another, and that upon the person's return to work he again would be out of job. His testimony further reflected the labor union required that when one works as a server that the employee receive the same pay as the absent employee. This then was the basis for his pay upon return to work at $8.61 an hour.
Considering the wage statements introduced by the employer and McKinnon, the commission found that McKinnon's earnings for the period of 52 weeks prior to the injury were $16,304.63 or an average weekly wage of $313.55. The employer and carrier also offered a wage statement, post-injury earnings, reflecting earings of $18,207.93 or an average weekly wage of $350.15. Both the administrative law judge and the Workers' Compensation Commission, in finding that McKinnon had sustained a loss of wage earning capacity, considered the medical evaluations by two of the physicians, Drs. Smith and Talkington, and in particular, McKinnon's inability to perform the incidents of his previous position, plus the limitation of his educational background. The administrative law judge noted that in determining the loss of wage earning capacity, there is taken into account more elements than a comparison of the pre-injury and post-injury earnings. Dunn, Mississippi Workmen's Compensation Law, § 68 (3rd Ed. 1982).
Mississippi Code Annotated, § 71-3-7 (1972), requires compensation shall be payable for "disability" for an injury arising out of and in the course of employment. The question of degree and duration of disability is one of fact, Wiggins v. Knox Glass, Inc., 219 So.2d 154 (Miss. 1969), the degree of disability is determined by (1) actual physical injury and (2) loss of wage earning capacity. Bill Williams Feed Store v. Mangum, 183 So.2d 917 (Miss. 1966). We find that McKinnon met his burden of proof as to physical disability. Further, the evidence presented indicates that McKinnon was effective in rebutting the presumption of no loss of wage earning capacity, which arises where the claimant's post-injury earnings equal or exceed his pre-injury wages.
We have held that this presumption, which has emerged from Mississippi Code Annotated, § 71-3-17(c)(25) (Supp. 1985), is rebuttable when certain circumstances exist:
This statute has been construed by this Court to mean that post-injury earnings equal to or in excess of pre-injury earnings are strong evidence of non-impairment of earning capacity, but that the presumption arising therefrom may be rebutted by evidence on the part of the claimant that the post-injury earnings are unreliable due to: increase in general wage levels since the time of accident, claimant's own greater maturity and training, longer hours worked by claimant after the accident, payment of wages disproportionate to capacity out of sympathy to claimant, and the temporary and unpredictable character of post-injury earnings. (Citations omitted.) (Emphasis added).
Wilcher v. D.D. Ballard Construction Co., 187 So.2d 308, 310-311 (Miss. 1966). See also, Agee v. Bay Springs Forest Products, Inc., 419 So.2d 188 (Miss. 1982).
Moreover, this list is certainly not an exclusive one. See Karr v. Armstrong Tire & Rubber Co., 216 Miss. 132, 61 So.2d 789 (1953). Our recent decision in Hall of Mississippi, Inc. v. Green, 467 So.2d 935 (Miss. 1985), reflects that any factor or condition which causes the actual post-injury wages to become a less reliable indicator of earning capacity will be considered.
Where there is substantial, although disputed, evidence supporting the commission's findings that the presumption was or was not overcome, we are required to affirm the commission's judgment. Marshall Durbin, Inc. v. Hall, 490 So.2d 877, 879 (Miss. 1986); Smith v. Picker Service Co., 240 So.2d 454 (Miss. 1970).

B.
The employer and carrier further argue that there was neither substantial evidence to support the finding that McKinnon suffered a disability to the back nor was there substantial evidence to support an award for loss of use of his hand. Our *366 findings are to the contrary and, upon review of all the evidence, we therefore affirm this point under our familiar substantial evidence rule.
The scope of review employed by this Court in workers compensation cases is restricted both by caselaw and statute. The function of this Court is to determine whether there is substantial credible evidence to support the factual determination made by the commission. Marshall Durbin, Inc. v. Hall, supra, at 879. See also, Penrod Drilling Co. v. Etheridge, 487 So.2d 1330, 1332 (Miss. 1986).
We have further held that disability need not be proved by medical testimony so long as there is medical testimony which will support a finding of disability. Hall of Mississippi, Inc. v. Green, 467 So.2d 935, 938 (Miss. 1985). There is evidence, quite sufficient, substantial and credible, upon which the commission based its findings. Therefore we are "without authority to disturb that which the commission has found, even though that evidence would not be sufficient to convince us were we the fact finders. (Citations omitted)" Marshall Durbin v. Hall, supra, at 879.

C.
The circuit court affirmed the commission's finding that McKinnon was entitled to permanent partial disability as a result of the injury of his hand as well as permanent partial disability for the injury to his back. The permanent partial disability benefits for the scheduled member were in compliance with Mississippi Code Annotated, § 71-3-17(c) and the permanent partial disability benefits for the back injury were awarded pursuant to Mississippi Code Annotated, § 71-3-17(c)(25). The employer and carrier assign this as error, arguing that although the commission found that McKinnon sustained two separate concurrent and compensable injuries, the laws of this State do not allow separate awards for these injuries. G.E. contends that McKinnon should receive only those benefits which have been anticipated and unequivocally specified by the Legislature.
The Mississippi Workers' Compensation statute "should be fairly construed according to the law and the evidence." Mississippi Code Annotated, § 71-3-1 (1972). Further, the Act is to be given broad and liberal construction and where there is doubt, cases are to be resolved in favor of compensation. Charles N. Clark Associates, Ltd. v. Robinson's Dependents, 357 So.2d 924 (Miss. 1978); Walton v. McLendon, 342 So.2d 732 (Miss. 1977). The terms of the Act should be given their common acceptation, therefore are not to be given their most narrow or most liberal construction. Deemer Lumber Co. v. Hamilton, 211 Miss. 673, 52 So.2d 634 (1951).
In accordance with the statute, compensation shall be paid for permanent partial disability following payment for temporary total disability. Therefore, an employee may be entitled to the maximum compensation for his permanent partial disability in addition to compensation for his temporary total disability, as was provided by the commission in this case. See Mississippi Code Annotated, § 71-3-17(b), (c). The Legislature accordingly afforded a payment plan for loss of scheduled members, § 71-3-17(c)(1-16), as well as several other specific injuries, § 71-3-17(c)(17-24).
The employer/carrier assume that if McKinnon is afforded permanent partial disability compensation for his back under the "other cases" provision, this necessarily precludes an award for permanent partial disability under Mississippi Code Annotated, § 71-3-17(c)(3) for a scheduled member. We find that certainly the Legislature and now this Court may have envisioned a situation wherein, arising out of a single accident, a back as well as a hand injury originates. There is no doubt that an employee may recover for a loss of eighty percent (80%) vision in one eye, § 71-3-17(c)(5), and loss of a hand, § 71-3-17(c)(3). There seems to be no logical explanation as to why an employee sustaining an injury to the back and to the hand cannot recover for each.
Professor Larson states that "the pervasive cannon of statutory construction [is] that where two remedies are created side *367 by side in a statute the claimant should have the benefit of the more favorable." 2 Larson's Workers Compensation Law, (1983), Section 58.25. Professor Larson finds however, that the usual statute provides for both "total disability and specific loss of a leg, without expressly saying either shall be exclusive." Id., Section 58.23. In a footnote to this statement, Professor Larson states the following:
When statutes expressly provide that scheduled payments, when applicable, are exclusive, or are in lieu of other benefits, cases on the question whether scheduled injuries can also be treated as a general disability from such jurisdictions are of no value, obviously, to support a rule that scheduled payments are exclusive in the absence of such a provision.
Id., note 25.
There is no such exclusiveness provision set forth in our statute.
Although there are no cases in our state addressing this particular issue, a review of our caselaw is of some assistance. In Webster Construction Co. v. Bates, 227 Miss. 207, 85 So.2d 795 (1956), we affirmed the action of the circuit court in reversing an order of the commission and entering a judgment requiring the employer and insurance carrier to pay compensation to the claimant for temporary total disability ... and beginning on a designated date to pay the claimant at the same rate for permanent partial disability in accordance with the "other cases" section of the statute. We find that the commission's ruling below is in accordance with the Bates opinion, the only difference being that in this case McKinnon was also awarded permanent partial disability for a scheduled member as well.
We found in Weyerhauser Co. v. Ratliff, 197 So.2d 231 (Miss. 1967), that the circuit court erred in reversing the commission's finding that as a result of an injury, in which the claimant suffered loss of use of his middle, ring and little fingers on his right hand, claimant also suffered aggravation of a pre-existing gastrointestinal condition, which required surgery, but was non-compensable for permanent partial disability. We stated:
As to the gastrointestinal condition the commission ruled that claimant was entitled to compensation for temporary total disability and medical expenses during period of such aggravation of the pre-existing condition, but was not entitled to compensation for any permanent partial disability as a result of said condition. Compensation for permanent partial disability was limited to the fingers and not proportioned to the hand. (Emphasis added)
Id. at 233.
This seems to serve as an indicator that we would have upheld the commission's order of permanent partial disability to the fingers as well as any compensation for any permanent partial disability as a result of the gastrointestinal condition. A gastrointestinal condition, like a back injury, would fall under the section pertaining to "other cases."
The situation in this case is one in which McKinnon suffered two separate and distinct injuries and was compensated therefore, unlike a situation wherein a claimant suffered an injury to the back which caused or resulted in an injury to the leg, such being a subsequent effect of the back injury. McKinnon's injury is one distinct from cases usually reviewed by us and as such, should be viewed in that light. We have repeatedly held that the Workers' Compensation Act is to be liberally construed, "all courts are agreed that there should be accorded to the Workers' Compensation Act a broad and liberal construction that doubtful cases should be resolved in favor of compensation, and that the humane purposes which these acts seek to serve leave no room for narrow technical constructions." Deemer Lumber Co. v. Hamilton, supra, 211 Miss. at 682-683, 52 So.2d 634. Therefore, the ruling of the commission and circuit court should be affirmed.

III.
On cross appeal McKinnon argues that the lower court erred in affirming the *368 commission's determination of apportionment. Substantially, the argument being that the commission lacked substantial evidence for its determination of a fifty percent (50%) (or one-half) apportionment, due to McKinnon's pre-existing infirmity of spondylolisthesis.
Physicians, Dr. Williams, Dr. Thompson and Dr. Talkington, all agreed that McKinnon suffered from a grade one spondylolisthesis of the L-5, S-1. Dr. Williams testified that although McKinnon had back strain as a result of this injury and that the spondylolisthesis aggravated the injury, it was his opinion that McKinnon suffered no degree of permanent impairment of his back. Dr. Thompson was of the opinion that McKinnon has a five percent (5%) permanent partial impairment to the back due only to the spondylolisthesis; however, he admitted that both the spondylolisthesis and the injury contributed to McKinnon's symptoms. Finally, Dr. T.W. Talkington, an orthopedic surgeon, testified by deposition that according to the x-rays performed on McKinnon, he suffered from a grade one spondylolisthesis of the L-5, S-1. Talkington testified that McKinnon, in his opinion, had reached maximum medical improvement when he last saw him on July 13, 1983, and that the injury aggravated the preexisting spondylolisthesis. He further testified that McKinnon had a five percent (5%) impairment to the body as a whole due to the persistent back pain, and limited leg raisings. It was Dr. Talkington's opinion that the pre-existing condition of spondylolisthesis contributed fifty percent (50%) to the impairment of the claimant's back.
As a result of his testimony, the administrative law judge found that McKinnon suffered permanent partial disability to the body as a whole, resulting in loss of wage earning capacity of $40.00 per week, fifty percent (50%) of which is attributable to pre-existing spondylolisthesis. The full commission reviewed these findings and the evidence, concurring with the administrative judge's finding that McKinnon was permanently partially disabled to the body as a whole, fifty percent (50%) of which was attributable to the pre-existing condition, however, the commission amended the order of the administrative judge to find McKinnon sustained a loss of wage earning capacity in the amount of $67.60 per week as opposed to $40.00 per week. The commission finally ordered permanent partial disability benefits, as apportioned, in the amount of $25.00 per week for 450 weeks pursuant to § 71-3-17(c)(25), provided, however, that the total payment of compensation benefits set forth shall not exceed the statutory maximum according to § 71-3-13 of Mississippi Code Annotated.
Section 71-3-7, Mississippi Code Annotated (1972), governs apportionment between the injury and the pre-existing malady. Bennett v. United Parcel Service, 382 So.2d 469 (Miss. 1982). That section provides in part:
Where a preexisting physical handicap, disease, or lesion is shown by medical findings to be a material contributing factor in which results following injury, the compensation which, but for this paragraph, would be payable shall be reduced by that proportion which such preexisting physical handicap, disease, or lesion contributed to the production of the results following the injury.
(a) Apportionment shall not be applied until the claimant has reached maximum medical recovery.
(b) The employer or carrier does not have the power to determine the date of maximum medical recovery or percentage of apportionment. This must be done by the attorney-referee, subject to review by the commission as the ultimate finder of fact. (Emphasis added).
We have enunciated the burden of proof on the employer-carrier for showing a pre-existing condition for the purpose of apportioning permanent partial disability benefits. See Walls v. Hodo Chevrolet Co., Inc., 302 So.2d 862, 865 (Miss. 1974). In Walls we emphasized that the employer-carrier had to prove not only the pre-existing condition existed, but this proof must be supported by medical findings. Moreover, the employer-carrier must show that the pre-existing condition continued to exist *369 and was a material contributing factor in the results following the present injury. We find that the evidence proves conclusively that apportionment was proper in this case. The administrative judge found fifty percent (50%) apportionment, however, the commission saw fit to allow McKinnon only the minimum amount of compensation pursuant to §§ 71-3-13 and 73-3-17(c)(25). It is left to the discretion of the triers of fact to determine the percentage of apportionment to be applied. Mississippi Code Annotated, § 71-3-7(b) (1972).
We find that the commission had before it "the best evidence available for explaining and describing facts relevant to apportionment under the statute, then [made] informed judgment in its sound discretion based on all circumstances and with reasonable support in the evidence and permissible inferences from it." Southeastern Construction Co. v. Dodson Dependent, 247 Miss. 1, 153 So.2d 276 (1963). Further the order of the Workers' Compensation Commission should be affirmed, if it is supported by substantial evidence and not against the great weight of the evidence. Marshall Durbin, supra; see also, Penrod Drilling Co. v. Etheridge, 487 So.2d 1330 (Miss. 1986).
In accordance with the rules of law above discussed, and the facts of this case, we are of the opinion that the determination by the commission and circuit judge is supported by the substantial evidence and, for this reason, the judgment of the circuit court is affirmed.
AFFIRMED.
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., and DAN M. LEE, PRATHER, ROBERTSON, ANDERSON and GRIFFIN, JJ., concur.
NOTES
[1] A server is a person replacing another worker who is out on leave.