BRIDGES, J.,
for the court.
¶ 1. John E. Harris filed a petition to controvert against Cooper Tire, where Harris alleged he sustained a compensable pulmonary injury while working as a Ban-bury operator in Cooper Tire’s plant in Clarksdale. Harris alleged that he had suffered scarring in his lungs resulting from exposure to hazardous environmental conditions in his work area that caused bronchitis and pneumonia. The administrative law judge found that Harris had suffered a work-related injury and that Harris was due temporary total disability benefits and medical benefits. Cooper Tire paid $3,248.04 in temporary benefits and $38,829.29 in medical benefits. The administrative law judge rejected Harris’s claims for permanent disability and loss of wage-earning capacity. Harris and Cooper Tire appealed to the Workers Compensation Commission (the Commission).
¶ 2. Following oral arguments, the Commission affirmed the administrative law judge’s finding that Harris had sustained a work-related compensable injury, but remanded on the issue of whether Harris had suffered permanent disability and a loss of wage-earning capacity. On remand, the case was transferred to a second administrative law judge, who found following an evidentiary hearing that Harris had suffered a permanent disability and *791 a loss of wage-earning capacity, and awarded Harris benefits of $50 per week for 450 weeks, with credit for previous compensation by Cooper Tire. Cooper Tire appealed again, and the Commission affirmed the administrative law judge’s findings.
¶ 3. Cooper Tire appealed to the Circuit Court of Coahoma County, and the court affirmed the findings of the Commission. Cooper Tire perfected its appeal to this Court on March 26, 2002.
STATEMENT OF THE ISSUES
I. DID THE COURT ERR IN AFFIRMING THE FINDINGS OF THE FULL COMMISSION THAT HARRIS SUFFERED A COMPENSABLE WORK-RELATED INJURY?
II. DID THE COURT ERR IN FINDING THAT HARRIS HAD SUFFERED A LOSS OF WAGE-EARNING CAPACITY?
FACTS
¶ 4. John Harris left work early on April 14, 1997, with respiratory problems. He spent two weeks in a local hospital being treated for pneumonia, then returned to work. After Harris returned to work he suffered shortness of breath and fatigue, and required assistance from coworker Michael Allen to perform his job. Allen testified at the first hearing that he had worked for more than three years with Harris, and that Harris’s work area was covered in chemical dust. Harris’s work consisted of hauling heavy bags of chemicals and dumping them into a hopper.
¶ 5. Allen further testified that he had provided Harris with extra work breaks following Harris’s return from treatment for pneumonia. Dr. Keith Mansel began treating Harris on June 19, 1997, for his continuing symptoms related to Harris’s pneumonia. Dr. Mansel treated Harris from June 19, 1997 until April 8, 1998, and on July 29, 1997, Dr. Mansel wrote to Cooper Tire requesting that Harris work in a less dusty environment. Dr. Mansel testified that Harris suffered from shortness of breath, fever, pleurisy, and that Harris’s chest x-rays indicated that Harris still suffered from some remaining ill effects of pneumonia. On April 3, 1998, Dr. Mansel ordered significant follow-up testing, including x-rays, a CT scan, and a breathing function test; these tests revealed, according to Dr. Mansel, that Harris was suffering from a fibrosis of the lungs that had reduced Harris’s lung capacity by more than 25%.
¶ 6. Dr. Mansel testified that it was his medical opinion that based on Harris’s medical history and general physical health, and considering that Harris was a reservist in the U.S. Army, Harris had developed this fibrosis from his work as a Banbury operator for Cooper Tire. Dr. Mansel based his opinion on the dusty work conditions and the poor ventilation in the work area. Harris had been a cigarette smoker for years prior to contracting pneumonia, and had discontinued smoking following this bout with pneumonia; however, Dr. Mansel testified that fibrotic scarring was inconsistent with damage caused by smoking, which tended to be either bronchial harm or emphysema, rather than fibrosis, while the shortness of breath could well have resulted from a history of smoking.
¶ 7. Cooper Tire offered testimony from Dr. Brian Forrester, a specialist in occupational medicine, who testified that Cooper Tire was in compliance with OSHA regulations. Further, he testified that the ventilation in the Banbury mixer area where Harris worked was adequate, although Cooper Tire had expanded it following *792 Harris’s illness. Dr. Forrester testified that it was highly unlikely that the chemicals that Harris worked with could have caused either Harris’s pneumonia or his fibrosis.
ANALYSIS
I. DID THE COURT ERR IN AFFIRMING THE FINDINGS OF THE FULL COMMISSION THAT HARRIS SUFFERED A COM-PENSABLE WORK-RELATED INJURY?
¶ 8. This Court reviews the decisions of the Commission under an arbitrary or capricious standard, and will not disturb the Commission’s findings unless they are unsupported by substantial evidence. Inman v. Coca-Cola/Dr. Pepper Bottling Co., 678 So.2d 992, 993 (Miss.1996). There are three elements to a claim of compensable work-related injury: the injury was accidental; it arose out of and in the course of employment; and there is a causal connection between the injury and the disability. Miss.Code Ann. § 71-3-3 (Rev.2000). An injury is com-pensable, even in cases where employment did not cause the injury, if the conditions of employment contributed to it. Hedge v. Leggett & Platt, Inc., 641 So.2d 9, 15 (Miss.1994).
¶ 9. Harris suffered pneumonia and fi-brotic scarring of the lungs. Dr. Mansel testified that the fibrotie scarring was consistent with irritation from the chemical dust that Harris inhaled. Dr. Mansel further testified that Harris’s fibrotie scarring would not be consistent with a history of cigarette smoking, because cigarette smoking damages the bronchial areas of the lungs, typically resulting in emphysema, rather than fibrosis. Dr. Forrester, who unlike Dr. Mansel did not specialize in pulmonary illnesses, spoke with Harris in his work area for about an hour, and it was his opinion that the chemicals Harris was in daily contact with would not cause him any harm. Dr. Forrester also testified that Harris’s work area was well ventilated, but Cooper Tire had significantly expanded the ventilation in the area following Harris’s pneumonia before Forrester’s examination of the work area.
¶ 10. Harris’s testimony that he suddenly began suffering chest pains and had difficulty breathing on April 14,1997, while at work stands uncontradicted. Cooper Tire argues that Harris’s history as a smoker contributed greatly to his illness, particularly since cigarette smokers have a lower resistance to pneumonia than nonsmokers. If pneumonia was the sole injury that Harris suffered, this argument would have merit; however, the extensive loss of lung function caused by the fibrotie scarring which is not symptomatic of long-term cigarette smoking is the underlying injury. Dr. Mansel testified that the pneumonia was related to the fibrosis. Dr. Forrester could not contradict Dr. Man-sel’s diagnosis, and he admitted so before the administrative law judge. Additionally, Dr. Forrester did not examine Harris’s full medical records, and he based his opinion on Harris’s being asymptomatic for more than a year following hospitalization. The testimony of Dr. Mansel, Harris, and Allen contradicts Dr. Forrester’s base assumption of Harris’s presenting asymp-tomatically for the aftereffects of pneumonia.
¶ 11. The medical evidence is not wholly conclusive; however, Harris is only required to prove his case by a preponderance of the evidence. Our case law permits courts to favor the testimony of treating physicians. South Central Bell Telephone Co. v. Aden, 474 So.2d 584, 593 (Miss.1985). Dr. Mansel’s testimony that smoking would not cause the fibrotie scar *793 ring that led to Harris’s pneumonia was uncontested. We find that the Commission’s finding of a compensable injury is supported by substantial evidence.
II. DID THE COURT ERR IN FINDING THAT HARRIS HAD SUFFERED A LOSS OF WAGE-EARNING CAPACITY?
¶ 12. Cooper Tire argues that as Harris has been continually employed since his injury and is in fact making more money now and working more hours than he was before his injury demonstrates that he has not in fact suffered a loss of wage-earning capacity. Cooper Tire is entitled to a presumption that Harris did not suffer a loss of wage-earning capacity precisely because his earnings are greater than before he suffered the fibrosis-related pneumonia. General Electric Co. v. McKinnon, 507 So.2d 363, 365 (Miss.1987). Harris can rebut the presumption by demonstrating that the earnings information is unreliable for any one of a number of factors: an increase in wage levels since the time of the accident; Harris’s own greater maturity and training; longer hours working following the accident; sympathy money, and any other factor or condition where post-injury wages are a less reliable factor of earning capacity. Id.; Karr v. Armstrong Tire & Rubber Co., 216 Miss. 132, 61 So.2d 789, 792 (1953); Spann v. Wal-Mart Stores, Inc., 700 So.2d 308, 313 (Miss.1997).
¶ 13. Harris argues since he required the assistance of coworkers to perform his job following the pneumonia that he indeed suffered a loss of wage-earning capacity. Harris presents several cases from Alabama, as Mississippi has no case law about whether the assistance of coworkers in performing one’s job demonstrates a loss of wage-earning capacity. Cooper Tire points out quite correctly that none of those cases proposes that the assistance of coworkers by itself is sufficient to demonstrate a loss of wage-earning capacity. However, Cooper Tire conceded that if Allen was in fact providing extra work breaks and covering for Harris that Harris would be reported and likely fired for failure to perform his job. Additionally, Cooper Tire could not contest the testimony of both Allen and Harris that Allen provided Harris with assistance from the time he returned to work following the injury. The administrative law judge also considered the fact that Harris tended to work less hours following his injury indicative of his lost wage-earning capacity. According to the administrative law judge, this evidence was sufficient to rebut the presumption that Harris’s wage-earning capacity was unimpaired, particularly coupled with the general increase in pay that all Ban-bury operators received following Harris’s injury.
¶ 14. The Commission affirmed in all particulars the administrative law judge’s order. Accordingly, we treat the administrative law judge’s decision as the Commission’s decision. Even though Harris presents a novel theory to account for his loss of wage-earning capacity, it is well within the non-restrictive criteria for determining whether such a loss actually occurred. Since the decision of the Commission is supported by substantial evidence, we find that the court below did not err in upholding the finding of the Commission that Harris had suffered a loss of wage-earning capacity.
¶ 15. For the foregoing reasons, we affirm.
¶ 16. THE JUDGMENT OF THE CIRCUIT COURT OF COAHOMA COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
*794 McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., THOMAS, LEE, IRVING, MYERS, CHANDLER AND GRIFFIS, JJ„ CONCUR.