WILSON, J., DISSENTING:
¶ 18. The revised majority opinion issued in response to the motion for rehearing misstates and confuses the law by holding that Mississippi Code Annotated section 71-3-17(c)(25) (Rev. 2011) applies to the award of permanent partial disability benefits in cases involving an injury to a scheduled member. As explained below, this provision applies only to non -scheduled-member injuries. The decision of the Commission should be affirmed because it is consistent with our holding in the prior appeal in this case and it is supported by substantial evidence. Accordingly, I respectfully dissent.
¶ 19. In a prior appeal in this case, this Court held that the "evidence establish[ed] that Logan has suffered a permanent partial or total disability," and we remanded the case "to the Commission for a determination of the appropriate award of compensation" in light of our holding. Logan v. Klaussner Furniture Corp. , 127 So.3d 1138, 1143 (¶ 22) (Miss. Ct. App. 2013) (" Logan I ") (emphasis added). On remand, the Commission followed this Court's instructions. The Commission found that Logan failed to prove a total loss of wage-earning capacity and thus failed to establish a permanent total disability. However, consistent with this Court's mandate, the Commission found that Logan had established a 60% industrial loss of use to her left lower extremity. Therefore, the Commission awarded Logan 105 weeks of compensation for her scheduled-member injury.[2] See Miss. Code Ann. § 71-3-17(c)(2)
*1172 (permanent partial disability for loss or 100% loss of use of a leg entitles the claimant to 175 weeks of compensation).
¶ 20. Logan again appealed from the decision of the Commission, and in this Court's initial (now withdrawn) opinion, the majority held that the Commission misapplied the law and our mandate in Logan I "because section 71-3-17(a) controls, not section 71-3-17(c) as applied by the Commission." Logan v. Klaussner Furniture Corp. , No. 2015-WC-01760-COA, --- So.3d ----, ----, 2016 WL 6753887, at *2 (¶ 10) (Miss. Ct. App. Nov. 15, 2016) (6-4 decision). However, section 71-3-17(a) applies only to cases of permanent total disability. Therefore, by holding that " section 71-3-17(a) controls," the majority was effectively holding that-as a matter of law-Logan was entitled to permanent total disability benefits. This was not consistent with our opinion in Logan I , which specifically stated three times that the evidence supported a finding of "permanent partial or total disability." Logan I , 127 So.3d at 1142-43 (¶¶ 20-22) (emphasis added). On rehearing, the majority appropriately recognizes that section 71-3-17(a) does not control to the exclusion of section 71-3-17(c).
¶ 21. The majority now holds that "either section 71-3-17(a) (permanent total) or (c)(25) (permanent partial) controls in this case, not section 71-3-17(c)(2) as applied by the Commission." Ante at (¶ 15) (emphasis added). This revised holding is erroneous because, as the majority acknowledges, this is a scheduled-member case: Logan suffered an injury to her left leg that resulted in a 4% medical impairment to that leg. Logan I , 127 So.3d at 1143 (¶ 22). Thus, the Commission properly awarded Logan permanent partial disability benefits according to the schedule, specifically, section 71-3-17(c)(2).
¶ 22. The majority's new holding that section 71-3-17(c)(25) may apply in a scheduled-member case is contrary to the plain language of the statute and precedent. Under the statute, the "schedule"-(c)(1) to (c)(24)-controls in cases of permanent partial disability involving the loss or loss of use of a scheduled member, such as a leg, and other specific injuries. Section (c)(25), in contrast, applies "[i]n all other cases" of permanent partial disability-i.e., in body-as-a-whole cases. Miss. Code Ann. § 71-3-17(c)(25) (emphasis added). As the Bradley and Thompson treatise explains, "[t]his section applies to body-as-a-whole injuries for which the benefits can run for 450 weeks and NOT to scheduled member injuries." John R. Bradley & Linda A. Thompson, Mississippi Workers' Compensation Law § 5:52 n.2 (2016) (capitalization in the original). This Court has made the same point:
Having issued a finding of permanent partial disability with regard to Martinez's arm only [and not with regard to his rib and sternum], the Commission correctly concluded, as a matter of law, that Martinez's injury was subject to disability benefits under the scheduled member chart set forth in [ section] 71-3-17(c)(1)and not the general total body impairment scheme stated in [ section] 71-3-17(c)(25) .
Martinez v. Swift Transp. & Ins. Co. , 962 So.2d 746, 752 (¶ 26) (Miss. Ct. App. 2007) (emphasis added).
¶ 23. To be clear, this is not a case in which the claimant suffered both an injury to a scheduled member and a non-scheduled-member injury and thus might be entitled to both an award under the schedule and an award under (c)(25). See *1173 Gen. Elec. Co. v. McKinnon , 507 So.2d 363, 366 (Miss. 1987). The only injury in this case is an injury to Logan's left leg that resulted in a 4% medical impairment to her leg. A claimant who experiences such a scheduled-member injury may be awarded permanent total disability benefits, but only if "the Commission finds that [she] sustained a total loss of wage earning capacity." Smith v. Jackson Constr. Co. , 607 So.2d 1119, 1128 (Miss. 1992) (emphasis added). The Commission found that Logan did not sustain a total loss of wage-earning capacity, and its decision is supported by substantial evidence. Thus, the only remaining issue is whether Logan should be awarded permanent partial disability benefits pursuant to the schedule or under (c)(25). The Commission correctly awarded benefits under the schedule because (c)(25) does not apply to scheduled-member cases. Indeed, Logan herself does not cite or rely on (c)(25) ; rather, her only argument on appeal is that the Commission erred by not awarding her permanent total disability benefits. Moreover, the majority does not cite-and I cannot find-any case applying (c)(25) to a scheduled-member injury. If this provision actually applied to scheduled-member cases, surely by now there would be at least one such case applying it.
¶ 24. I do not understand the basis for the majority's new holding that "either section 71-3-17(a) (permanent total) or (c)(25) (permanent partial) controls in this case, not section 71-3-17(c)(2) as applied by the Commission ." Ante at (¶ 15) (emphasis added). Logan suffered an injury to her leg, and the Commission found a permanent partial disability based on that injury. By its plain and clear language, section 71-3-17(c)(2) applies to cases of permanent partial disability based on leg injuries. The majority does not explain why (c)(25) applies to the exclusion of (c)(2). Is there something unique about this case that compels this result? Or does a claimant in a scheduled-member case get to choose which provision she prefers? Practitioners and the Commission apparently will have to figure this out in future cases.
¶ 25. I also do not understand why the majority remands with instructions that continue to hold open the possibility that " section 71-3-17(a) (permanent total) ... controls." Ante at (¶ 15). The Commission has already addressed this issue and found that Logan failed to prove a permanent total disability under section 71-3-17(a). The Commission's finding is supported by substantial evidence and should be affirmed. If it is not supported by substantial evidence, then this Court should reverse and render and bring this case to an end. Either way, the Commission has already addressed the issue, so it is now ripe for review on appeal. By again remanding the case to the Commission with instructions to award either total or partial disability benefits, the majority simply invites another appeal. Indeed, the very issue that Logan wanted us to decide in this appeal was whether the Commission erred by finding that her disability is partial rather than total. For reasons that are unclear, the majority declines to address the issue that Logan actually raised on appeal.
¶ 26. In remanding this case again, the majority reasons that in Logan I we stated that "Logan should have been assessed a loss of wage-earning capacity," and that loss of wage-earning capacity is not the basis for calculating benefits under the schedule. Thus, the majority reasons, our decision in Logan I must have included an implicit mandate to the Commission to apply (c)(25)-even though (c)(25) was not mentioned anywhere in the Logan I opinion. I respectfully disagree for four reasons. First, the Commission did consider wage-earning capacity on remand. It found *1174 that Logan failed to prove a total loss of wage-earning capacity under section 71-3-17(a), so she was not entitled to permanent total disability benefits. See Smith , 607 So.2d at 1128. In a scheduled-member case such as this, that was the only finding that was necessary regarding wage-earning capacity.
¶ 27. Second, even in a permanent partial disability case involving a scheduled-member injury, "[w]age-earning capacity is a factor to be considered," and the Commission should consider any such evidence that is presented, even though "loss of use" is the ultimate measure of compensation in such a case. Weatherspoon v. Croft Metals Inc. , 853 So.2d 776, 779 (¶ 14) (Miss. 2003). Thus, the mere fact that we directed the Commission to consider wage-earning capacity should not be taken as an implicit order to apply section 71-3-17(c)(25) rather than the schedule.
¶ 28. Third, if Logan I 's reference to wage-earning capacity meant anything more than that it should be considered under Smith and Weatherspoon , supra , then it was only dicta. Our holding in Logan I was simply that the Commission should award Logan compensation for a "permanent partial or total disability." Logan I , 127 So.3d at 1142-43 (¶¶ 20-22). Anything beyond that holding was dicta.
¶ 29. Fourth, even if Logan I could somehow be read to include an implied mandate to apply (c)(25) in this scheduled-member case, "this Court may, in certain exceptional instances, overturn a previous decision when that decision was manifestly erroneous, and upholding it on subsequent appeal would result in a grave injustice." J.K. v. R.K. , 30 So.3d 290, 296 (¶ 22) (Miss. 2009). The notion that (c)(25) applies to scheduled-member cases is manifestly wrong, confuses the law, and should not be perpetuated even if our prior decision somehow suggested it.
¶ 30. The majority opinion misstates the law and will confuse the law substantially in scheduled-member cases. The Commission's decision should be affirmed because it is consistent with our opinion in Logan I and is supported by substantial evidence. I respectfully dissent.
GRIFFIS, P.J., CARLTON AND FAIR, JJ., JOIN THIS OPINION.

The October 23, 2015 order of the Commission on remand is available at 2015 WL 6776924. The Commission's order affirmed an opinion and order of the administrative judge on remand, which is available at 2015 WL 2157595.